QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (CA Bar No. 243473)
  margretcaruso@quinnemanuel.com
Carolyn M. Homer (CA Bar No. 286441)
  carolynhomer@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

*Attorneys for Plaintiff*
*Google Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **Google Inc.,** | Case No. 5:17-cv-04207-EJD |
| Plaintiff, | **GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |
| vs. | **HEARING** |
| **Equustek Solutions Inc., Clarma Enterprises Inc.,** and **Robert Angus,** | DATE:   September 14, 2017<br>TIME:   9:00 a.m.<br>PLACE:  Courtroom 4 - 5th Floor<br>JUDGE:  Hon. Edward J. Davila |
| Defendants. | |

**<u>NOTICE OF MOTION</u>**

TO DEFENDANTS EQUUSTEK SOLUTIONS INC., CLARMA ENTERPRISES INC. AND ROBERT ANGUS, AND THEIR COUNSEL:

PLEASE TAKE NOTICE that on September 14, 2017 or as soon the matter may be heard, in the courtroom of the Honorable Edward J. Davila at the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 4, 280 South 1st Street, San Jose, California 95113, Plaintiff Google Inc. ("Google") shall and hereby does move the Court for a preliminary injunction prohibiting enforcement in the United States of an order obtained by Defendants Equustek Solutions Inc., Clarma Enterprises Inc., and Robert Angus (collectively "Equustek") from the Supreme Court of British Columbia on June 13, 2014. The order requires Google to delist search results worldwide, including in the United States. Google has complied with that order through appeals to the Court of Appeal and the Supreme Court of Canada, which affirmed the order on June 28, 2017 in *Google Inc. v. Equustek Solutions Inc.*, 2017 SCC 34, and Google continues to comply with it.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declarations of Andrew Strait, Stephen Schachter, and Margret Caruso, with accompanying exhibits, and all such further written materials and oral arguments as may be presented to the Court.

DATED:  July 26, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____
    Margret M. Caruso
    Carolyn M. Homer

*Attorneys for Plaintiff
Google Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................2

    A.    Google Offers Search Services Around The World. ...................................2

    B.    Equustek Sues Competitor Datalink In Canada. ......................................3

    C.    The Canadian Court Enjoins Google From Displaying Links To Datalink's Websites In Search Engine Results Worldwide. ..........................................4

    D.    Canadian Courts Reject Google's Appeals Of The Canadian Order. .......................6

ARGUMENT ...............................................................................................................6

I.      THE DECLARATORY JUDGMENT ACT PERMITS GOOGLE TO CONTEST EQUUSTEK'S ENFORCEMENT OF THE CANADIAN ORDER ...................................6

II.    GOOGLE IS ENTITLED TO A PRELIMINARY INJUNCTION BARRING ENFORCEMENT OF THE CANADIAN ORDER IN THE UNITED STATES. ................7

    A.    Google Is Likely To Succeed On The Merits Because The Canadian Order Prohibiting Google From Displaying Truthful Search Results To U.S. Google Users Is Unenforceable In The United States. ...................................8

          1.    Enforcement Of The Canadian Order Blocking Information Available to U.S. Google Users Would Violate The First Amendment. ...................................8

               (a)    Google's Speech Is Protected By The First Amendment. ..................8

               (b)    The Canadian Order Cannot Survive First Amendment Scrutiny. ...................................11

                    (i)    The Canadian Order Cannot Survive Strict Scrutiny. ..........11

                         A)    The Canadian Order Is Not Narrowly Tailored. ...................................12

                         B)    Enforcing Google's Compliance With The Canadian Order Furthers No Compelling Interest. ...................................14

                    (ii)    The Canadian Order Cannot Survive Intermediate Scrutiny. ...................................15

          2.    Enforcement Of The Canadian Order Would Violate Section 230 Of The Communications Decency Act. ...................................16

               (a)    Section 230 Immunizes Internet Service Providers From Liability For Other Speakers' Content. ...................................16

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

(b)   Google is Eligible for Section 230's Immunity. ..............................17

3.   The Canadian Order Is Incompatible With International Comity...............18

(a)   Federal Courts Need Not Enforce Foreign Court Injunctions
Requiring United States Compliance. ...............................................18

(b)   Foreign Injunctions Repugnant To United States Policy Are
Unenforceable In The United States. ................................................20

B.   The Remaining Preliminary Injunction Factors Weigh In Favor Of
Enjoining Enforcement Of The Canadian Order In The United States...................21

CONCLUSION ........................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdullah v. Sheridan Square Press, Inc.*,
Case No. 93-cv-2515, 1994 WL 419847 (S.D.N.Y. May 4, 1994) .................................... 21

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .................... 7, 22

*American Trucking Association v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) .................... 8. 24

*Arc of California v. Douglas*,
757 F.3d 975 (9th Cir. 2014) .................... 7, 21

*Arizona Dream Act Coalition v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) .................... 22, 23

*Arizona Right to Life Political Action Committee v. Bayless*,
320 F.3d 1002 (9th Cir. 2003) .................... 7

*Arkansas Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987) .................... 11

*Ashcroft v. Free Speech Coalition*,
535 U. S. 234 (2002) .................... 10

*Asia Economic Institute v. Xcentric Ventures LLC*,
Case No. 10-cv-01360, 2011 WL 2469822 (C.D. Cal. May 4, 2011) .................... 17

*Bachchan v. India Abroad Publications Inc.*,
154 Misc. 2d 228, 585 N.Y.S.2d 661 (N.Y. Sup. Ct. 1992) .................... 21

*Bank of Montreal v. Kough*,
612 F.2d 467 (9th Cir. 1980) .................... 19

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .................... 18

*Board of Trustees of State University of N.Y. v. Fox*,
492 U.S. 469 (1989) .................... 15

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. 60 (1983) .................... 15

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .................... 19

*Carafano v. Metrosplash.com., Inc.*,
339 F.3d 1119 (9th Cir. 2003) .................... 17

*Community House, Inc. v. City of Boise*,
    490 F.3d 1041 (9th Cir. 2007)..........................................................................8

*Cohen v. Facebook, Inc.*,
    Case No. 16-cv-5157, 2017 WL 2192621 (E.D.N.Y. May 18, 2017) ..............18

*Eduardo v. Google Brasil Internet Ltd.*,
    Appeal No. 1054138-03.2014,
    Sao Paulo State Court of Appeal (Apr. 5, 2017) ............................................19

*Elrod v. Burns*,
    427 U.S. 347 (1976) ......................................................................................22

*e-ventures Worldwide, LLC v. Google, Inc.*,
    Case No. 2017 U.S. Dist. LEXIS 88650, ECF 153 (M.D. Fla. Feb. 8, 2017)......................9

*Farris v. Seabrook*,
    677 F.3d 858 (9th Cir. 2012)..........................................................................23

*Firearms Policy Coalition Second Amendment Defense Committee v. Harris*,
    192 F. Supp. 3d 1120 (E.D. Cal. 2016) ...........................................................7

*Ford Motor Co. v. Lane*,
    67 F. Supp. 2d 745 (E.D. Mich. 1999) ...........................................................10

*Greater New Orleans Broadcasting Association, Inc. v. United States*,
    527 U.S. 173 (1999) ......................................................................................16

*Grosjean v. American Press Co.*,
    297 U.S. 233 (1936) ......................................................................................11

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ......................................................................................19

*Intel Corp. v. Hamidi*,
    71 P.3d 296 (Cal. 2003) ..................................................................................8

*Jian Zhang v. Baidu.com Inc.*
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...................................................9, 11, 12

*Kimzey v. Yelp!*,
    836 F.3d 1263 (9th Cir. 2016)........................................................................18

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .....................................................................17

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009).....................................................................8, 22

*Langdon v. Google Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) .................................................................9

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012).......................................................................7, 22

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ........................................................................................................ 15

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) .............................................................................................. 15, 16

*Matusevitch v. Telnikoff*,
    877 F. Supp. 1 (D.D.C. 1995), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998) ............................ 21

*Medellin v. Texas*,
    552 U.S. 491 (2008) ........................................................................................................ 19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .......................................................................................................... 7

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974) .......................................................................................................... 9

*Nebraska Press Association v. Stuart*,
    427 U.S. 539 (1976) ........................................................................................................ 12

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .......................................................................................................... 8

*O'Grady v. Superior Court*,
    139 Cal. App. 4th 1423 (Cal. Ct. App. 2006) .......................................................... 10, 13

*O'Kroley v. Fastcase, Inc.*,
    831 F.3d 352 (6th Cir. 2016) .......................................................................................... 18

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) .................................................................................................... 10

*Parker v. Google Inc.*,
    422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................................................................. 18

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................................................ 17

*Planned Parenthood Arizona, Inc. v. Humble*,
    753 F.3d 905 (9th Cir. 2014) .......................................................................................... 22

*Police Department of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) .......................................................................................................... 11

*Procter & Gamble Co. v. Bankers Trust Co.*,
    78 F.3d 219 (6th Cir. 1996) ............................................................................................ 10

*Rain CII Carbon, LLC v. Kurczy*,
    Case No. 12-cv-2014, 2012 WL 3577534 (E.D. La. Aug. 20, 2012) .............................. 11

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994) ............................................................................................... 19

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ................................................................ 11

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ................................................................ 16

*Sarl Louis Feraud International  v. Viewfinder, Inc.,*
    489 F.3d 474 (2d Cir. 2007) .................................................... 21

*Search King Inc. v. Google Tech., Inc.,*
    Case No. 02-cv-1457, 2003 WL 21464568 (W.D. Okla. May 27, 2003) ................ 9, 10, 11

*Shuttlesworth v. City of Birmingham, Ala.,*
    394 U.S. 147 (1969) .............................................................. 7, 22

*Sikhs for Justice, Inc. v. Facebook, Inc.,*
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...................................... 18

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) .............................................................. 15

*Thalheimer v. City of San Diego,*
    645 F.3d 1109 (9th Cir. 2011) .................................................. 23

*Valle Del Sol Inc. v. Whiting,*
    709 F.3d 808 (9th Cir. 2013) ................................................... 22

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    169 F. Supp. 2d 1181, 1192 (N.D. Cal. 2001) .......................... 21

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199, 1214 (9th Cir. 2006) ...................................... 19, 21

*Zeran v. America Online,*
    129 F.3d 327 (4th Cir. 1997) ................................................. 17

**Constitution, Statutes and Rules**

U.S. Constitution, First Amendment .................................................... *passim*

47 U.S.C. § 230 ............................................................................. *passim*

28 U.S.C. § 2201 ................................................................................... 6

Cal. Civ. Proc. Code § 1715 ............................................................... 19

Cal. Civ. Proc. Code § 1716 ............................................................... 20

**Other Authorities**

Restatement (Third) of Foreign Relations Law § 402 (1987) .......................... 19

Restatement (Fourth) of Foreign Relations Law § 404 (2014) ........................ 20

Restatement (Fourth) of Foreign Relations Law § 408 (2014) ........................ 20

1

## INTRODUCTION

2   This case is about whether a foreign court may compel a search engine to alter results

3 displayed within the United States to suppress truthful speech about the existence of publicly

4 accessible websites.  On June 28, 2017, the Supreme Court of Canada affirmed an order enjoining

5 Google, a non-party to the underlying lawsuit brought by Canadian plaintiffs against Canadian

6 defendants, from listing certain of the Canadian defendants' websites in search results displayed

7 anywhere in the world, including within the United States.  The Canadian lower court had

8 previously ordered those defendants to cease their online sales after they defaulted, and it struck

9 their answer denying trade secret and other liability.  Because the Canadian defendants ignored the

10 injunction against them, the plaintiffs sought and obtained an injunction against Google.  The

11 Canadian court did not enjoin any other search engine, internet platform, or other entity aside from

12 the actual defendants.  Thus, although Google has complied with the order, many of the websites

13 remain live on the internet today, accessible via various search engines and other internet sources.

14   During oral argument to the Supreme Court of Canada, the Canadian plaintiffs' counsel

15 argued that Canadian courts are not "qualified to decide what American law means" regarding the

16 First Amendment, that the enforceability of the Canadian Order "in the United States is a question

17 for U.S. courts and has nothing to do with this case," and that after the decision, "the American

18 courts [can] then tell us what the law really is."  The Supreme Court of Canada agreed and

19 rejected as merely "theoretical" Google's concerns about the order's clear conflict with the U.S.

20 Constitution's free speech clause and statutes relating to speech on the internet.

21   Having exhausted its Canadian appeals, Google finds itself on the horns of a dilemma:  it

22 can refuse to comply with the Canadian order in the United States and risk contempt, or it can

23 abandon its U.S. rights and continue to comply with Canada's global delisting order.   The laws of

24 the United States do not limit Google to these choices, and Google here seeks a declaratory

25 judgment establishing that its rights under the First Amendment and the Communications Decency

26 Act are not merely "theoretical," and that the Canadian order is unenforceable to the extent it

27 restricts Google's search results in the United States.

28

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1     This Court should enjoin enforcement of the Canadian order in the United States because it

2  unlawfully interferes with Google's protected speech, i.e., reporting the existence of relevant

3  publicly available websites in search results returned to users within the United States.  Google is

4  likely to succeed in showing that the Canadian order is unenforceable in the United States because

5  it directly conflicts with the First Amendment, disregards the Communications Decency Act's

6  immunity for interactive computer service providers, and violates principles of international

7  comity.  Given the fundamental constitutional issues at stake, Google is irreparably harmed by the

8  Canadian order's prior restraint on protected speech, which prohibits Google from truthfully

9  displaying information in the United States about publicly available websites.  The equities also

10  sharply tip in Google's favor, and the public interest favors barring enforcement of the Canadian

11  order within the United States.  Accordingly, this Court should grant Google's motion for a

12  preliminary injunction.

13                              **FACTUAL BACKGROUND**

14     **A.    Google Offers Search Services Around The World.**

15     Google Inc. ("Google") is an American company that offers a free and popular internet

16  search engine, accessible at www.google.com.  Declaration of Andrew Strait ("Strait Decl.") ¶ 2.

17  Google also offers its search engine via more than a hundred different country-specific portals,

18  such as www.google.mx and www.google.fr (targeted, respectively, to users in Mexico and

19  France).  Strait Decl. ¶ 4.  Google Search is not the internet, but rather acts as a reference guide

20  about the internet.  *See id.* ¶¶ 3, 7.  Like the whitepages publishing publicly-known telephone

21  numbers, or a gas station clerk providing drivers with directions, Google reports on facts, i.e., the

22  existence of webpages that are relevant and readily accessible to the public via the internet.  *See*

23  *id.* ¶ 3.  Google's search results are based on Google's computers crawling, indexing, and

24  algorithmically analyzing the trillions of webpages that make up the public internet.  *Id.* ¶ 3.  The

25  results of each individual search are returned automatically, but they are based on judgments

26  Google has made, and subsequently programmed into Google's ranking algorithms, about what

27  material users are most likely to find responsive to their queries.  *Id.* ¶ 3.

28

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1    The entities with the technical ability to remove websites or content from the internet

2  altogether are the websites' owners, operators, registrars, and hosts—not Google.  Strait Decl. ¶ 7.

3  Removing a website link from Google's search index neither prevents public access to the

4  website, nor removes the website from the internet at large.  *Id.* ¶ 9.  Anyone can still access the

5  website via other means, such as by entering the website's address in a web browser, finding the

6  website through other search engines (such as Bing or Yahoo), or clicking on a link within the

7  content of a website (e.g., CNN.com), email, social media post, or advertisement.  *Id.*

8    **B.    Equustek Sues Competitor Datalink In Canada.**

9    Six years ago, Equustek Solutions Inc. and its associated business and principal

10  (collectively, "Equustek") sued individual and corporate defendants connected with a former

11  distributor and rival business selling network interfacing hardware (collectively, "Datalink") in

12  Vancouver, British Columbia.  *See* Declaration of Stephen R. Schachter ("Schachter Decl."), Ex. 2

13  (Notice of Civil Claim).  Equustek alleged, *inter alia*, that Datalink had colluded with a former

14  Equustek engineer to incorporate Equustek's trade secret hardware designs and source code into a

15  Datalink product, the GW1000, that Datalink sold the GW1000 instead of the Equustek products

16  that customers thought they were ordering, and that Datalink made misleading statements about

17  Equustek on its websites.  *Id. ¶¶* 44-64.  In its Canadian lawsuit, Equustek did not allege that it

18  was eligible for trade secret or other protection under the laws of any country outside of Canada,

19  or that Datalink had violated any non-Canadian laws.  *Id.*, *passim.*

20    Equustek procured multiple court orders against Datalink in the summer of 2012, including

21  an order striking Datalink's answer, an asset freeze, and an injunction against Datalink from

22  continuing to sell the product at issue.  *See* Schachter Decl., Ex. 3 (*Equustek Solutions Inc. v. Jack*,

23  2012 BCSC 1490) ¶¶ 36-46.  Datalink did not comply, continued to operate its business, and fled

24  the country.  *See id.* Ex. 3 (2012 BCSC 1490), ¶ 41, Ex. 10 (*Equustek Solutions Inc. v. Jack*, 2014

25  BCSC 1063 (hereinafter "trial court opinion")) ¶ 7, Ex. 1 (*Google Inc. v. Equustek Solutions Inc.*,

26  2017 SCC 34 (hereinafter "SCC Op.")) ¶¶ 5-7, 9-11.  Finding that Datalink may be in contempt of

27  court, the Canadian court issued an arrest warrant for an individual defendant who has not yet

28  been apprehended.  *See id.*, Ex. 4 (Arrest Warrant), Ex. 1 (SCC Op.) ¶ 10.  To this day, Datalink

continues to sell the GW1000 online.  *See, e.g.*, Caruso Decl., Ex. 3 (screenshot of

http://www.datatechgateways.com/ as of July 22, 2017).

Because Datalink ignored the Canadian court's orders and continued to operate its websites, Equustek asked Google to "cease indexing" Datalink's websites in Google's search results.  *See* Schachter Decl., Ex. 6 (9/20/2012 Letter).  Pursuant to its policies, Google declined to do so at that time because the injunction Equustek obtained against Datalink in Canada did not require Datalink to remove the webpages at issue from the internet.  *See id.*, Ex. 7 (9/24/2012 fax). Equustek then moved for such an order.  *See id.*, Ex. 8 (11/13/2012 Notice of Application).  In December 2012, the Canadian court granted Equustek's motion against Datalink, in default, and issued an order "prohibiting [Datalink] from carrying on business through any website."  *Id.*, Ex. 5 ¶ 2.  In light of that order, and pursuant to its policies, Google voluntarily blocked links to 345 individual webpages associated with Datalink from appearing in Google's Canadian search results on www.google.ca, where approximately 95% of Google searches in Canada occur.  *See* Strait Decl., ¶¶ 5, 10, Ex. 5.

Although Google voluntarily delisted from its Canadian search site the links to the webpages that Datalink was ordered to disable, Google declined Equustek's demand to delist those links from Google's search results targeted to users outside of Canada's borders, including in the United States.  *See* Strait Decl., ¶ 11.  Google strives to "maintain the rights of citizens around the world to access legal information," recognizing that not all countries agree on what is unlawful speech.  *Id.*, Ex. 6 (blogpost by Google's General Counsel entitled "A principle that should not be forgotten").  Google "work[s] hard to respect these differences" of law—complying with the laws of the countries in which it operates, but accepting "the principle [that] one country should not have the right to impose its rules on the citizens of other countries."  *Id.*

**C.     The Canadian Court Enjoins Google From Displaying Links To Datalink's Websites In Search Engine Results Worldwide.**

Unsatisfied with Google's decision to delist only from its Canadian search site, Equustek returned to the Canadian court and sought an order requiring Google to remove links to Datalink websites from all of Google's search results globally.  Schachter Decl., Ex. 9.  Notably, Equustek

1   did not seek this order from a U.S. court, where Google is headquartered, and where Equustek's

2   application would have been subject to the First Amendment and other U.S. laws. *Id.* Nor did

3   Equustek even allege any enforceable trade secret or other rights in any jurisdiction outside of

4   Canada, including the United States. *Id.*

5          On June 13, 2014, the Canadian trial court issued an unprecedented order, requiring that

6   Google delist Datalink websites from Google's search results worldwide, including within the

7   United States. Schachter Decl., Ex. 10 (trial court opinion) ¶¶ 159, 161). The Canadian trial court

8   recognized that Google was an "innocent bystander," which "operates its search engines in the

9   ordinary course of its business, independently of the [Datalink] defendants and not in order to

10  assist them in their breach." *Id.* ¶¶ 113, 156. Nevertheless, the court found that Google was

11  "unwittingly facilitating the defendants' ongoing breaches of this Court's orders" and concluded

12  "[t]here is no other practical way for the defendants' website sales to be stopped." *Id.* ¶ 156.

13  Equustek did not present, nor did the court cite, evidence supporting these findings, yet the court

14  "compel[led] Google to block the defendants' websites from Google's search results world-wide."

15  *Id.* ¶¶ 156, 159, 161. Google sought a stay of the June 2014 order pending its appeal in Canada,

16  but when that request was denied, Google complied with the Canadian court's order, delisting 33

17  Datalink websites from its search results globally. *See* Schachter Decl., Ex. 20 (Canadian order

18  denying stay), Ex. 10 (trial court order); Strait Decl. ¶ 12, Ex. 7.

19         Not surprisingly, Google's compliance did not cause Datalink to "cease operating or

20  carrying on business through any website." *See* Schachter Decl., Ex. 5 (2012 Order) ¶ 2. Rather,

21  Datalink continued to operate websites selling the GW1000 and to develop new webpages. This

22  led Equustek to seek, and the Canadian trial court to grant, nine additional supplemental orders

23  requiring Google to delist more than 75 additional Datalink-associated websites. *See* Schachter

24  Decl., Exs. 11-19 (supplemental orders). Collectively, the June 2014 order and all supplements

25  are referred to herein as the "Canadian Order."

26         Despite compliance with the Canadian Order for three years now, many Datalink websites

27  remain publicly available. More than a third of the Datalink websites Google delisted are still

28  active; anyone who enters the URL of one of those sites into a web browser can still access it. *See*

1   Caruso Decl., Ex. 1 (list of delisted websites still online as of July 22, 2017).  It does not appear

2   that Equustek ever sought removal of the websites from their registrars or webhosts, which

3   possess the ability to remove the enjoined websites from the internet.  Schachter Decl. ¶ 16; Strait

4   Decl. ¶ 7.  Nor has Equustek sought or obtained similar orders mandating that other search

5   engines, or anyone else on the internet, remove links the Datalink websites.  Schachter Decl.

6   ¶¶ 17, 18; *see also* Caruso Decl., Exs. 4-5 (showing top Bing and Yahoo search results).

7             **D.    Canadian Courts Reject Google's Appeals Of The Canadian Order.**

8         Google promptly appealed the Canadian Order to the Court of Appeal for British

9   Columbia, which affirmed, holding among other things that the Order did not "offend the

10   sensibilities of any other nation."  *See* Schachter Decl., Ex. 21 (*Equustek Solutions Inc. v. Google*

11   *Inc.*, 2015 BCCA 265) ¶¶ 3-4, 93.  Google further appealed to the Supreme Court of Canada,

12   which also affirmed.  *See id*., Ex. 1 (SCC Op.).  Google has no further recourse in Canada to

13   appeal the Canadian Order.  *Id.* ¶ 2.

14         Since the initial Canadian Order issued, Google employees in the U.S. have removed more

15   than 100 Datalink-associated web addresses from search results in more than 100 international

16   Google Search domains.  Strait Decl., ¶¶ 4, 12-13, Ex. 7.  Absent relief from this Court, the

17   Canadian Order requiring global delisting remains in effect, without any regard for how the First

18   Amendment or other laws protect Google's right to provide truthful information to U.S. users.

19                                **ARGUMENT**

20   **I.    THE DECLARATORY JUDGMENT ACT PERMITS GOOGLE TO CONTEST
         EQUUSTEK'S ENFORCEMENT OF THE CANADIAN ORDER**

21

22         Google seeks a declaratory judgment that the Canadian Order is unenforceable within the

23   territorial boundaries of the United States because its enforcement would violate the First

24   Amendment and the Communications Decency Act.  An "actual controversy" exists under 28

25   U.S.C. § 2201(a) because Equustek has, through the Canadian proceedings, conscripted Google

26   into suppressing within the United States search results about active Datalink sites, thus

27   demonstrating its intent to enforce the Canadian Order as it relates to Google's U.S. search results.

28   Schachter Decl., Ex. 23 (SCC Argument Tr.) at 88-89, 114-115 (Equustek acknowledging that

1  whether U.S. First Amendment law will prevent enforcement in the United States is a question for

2  U.S. courts); Strait Decl. ¶¶ 12-13, Ex. 7.

3       Adjudication by this Court is appropriate because enforcement of the Canadian Order to

4  suppress search results in the United States requires Google's compliance within the territorial

5  boundaries of the United States, and there is no further right to appeal in Canadian courts.

6  Schachter Decl. ¶ 2, Ex. 1; Strait Decl. ¶ 14.  Without a declaratory judgment, Google is forced to

7  comply with the Canadian Order, with no hope of reprieve—or risk contempt in Canada for

8  exercising its First Amendment rights within the United States.  *See, e.g.*, *Firearms Policy Coal.*

9  *Second Amendment Def. Comm. v. Harris*, 192 F. Supp. 3d 1120, 1125 (E.D. Cal. 2016) (the First

10  Amendment affords standing "where a plaintiff alleges that he or she engaged in self-censorship as

11  a result of a speech-restricting statute") (citing *Az. Right to Life Pol. Action Comm. v. Bayless*, 320

12  F.3d 1002, 1006-07 (9th Cir. 2003)); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 158

13  n.7 (1969) ("[I]n face of the prohibition of an injunctive order … the proper procedure [is] to seek

14  judicial review of the injunction and not to disobey it, no matter how well-founded [plaintiffs']

15  doubts might be as to its validity."); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118,

16  137 (2007) (holding that a plaintiff need not "break or terminate" compliance with an existing

17  legal obligation before seeking a declaratory judgment of unenforceability).

18  **II.**    **GOOGLE IS ENTITLED TO A PRELIMINARY INJUNCTION BARRING ENFORCEMENT OF THE CANADIAN ORDER IN THE UNITED STATES.**

19

20       "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

21  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

22  balance of equities tips in his favor, and that an injunction is in the public interest."  *Arc of*

23  *California*, 757 F.3d 975, 983 (9th Cir. 2014) (citation omitted).  The Ninth Circuit uses a "sliding

24  scale approach to preliminary injunctions," under which a preliminary injunction should issue

25  "where the likelihood of success is such that serious questions going to the merits were raised and

26  the balance of hardships tips sharply in plaintiff's favor."  *Alliance for the Wild Rockies v.*

27  *Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (formatting and citation omitted); *accord M.R. v.*

28  *Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).  Google satisfies that test.

**A.**   **Google Is Likely To Succeed On The Merits Because The Canadian Order Prohibiting Google From Displaying Truthful Search Results To U.S. Google Users Is Unenforceable In The United States.**

Google is likely to prevail in showing that the Canadian Order is unenforceable in the United States.   The Canadian Order, as directed at speech in the U.S., clearly violates the First Amendment's protection for free speech, ignores the immunities created by Congress for providers of interactive computer services under the Communications Decency Act, and trespasses on international comity.   Supreme Court and Ninth Circuit precedent "clearly favors granting preliminary injunctions to a plaintiff . . . who is likely to succeed on the merits of [a] First Amendment claim."   *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).   Similar principles favor enjoining violations of federal law.   *E.g. American Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009).   At a minimum, Google's claims raise "serious questions going to the merits" so as to warrant a preliminary injunction under the "sliding scale" test.   *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

    1.   Enforcement Of The Canadian Order Blocking Information Available to
      U.S. Google Users Would Violate The First Amendment.

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press."   U.S. Const. Amend. 1.   This prohibition extends to judicial restraints on free speech.   *E.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) ("Although this is a civil lawsuit between private parties, the Alabama courts have . . . impose[d] invalid restrictions on their constitutional freedoms of speech and press.").   "[T]he use of government power, [through an] *injunction in a private lawsuit*, is state action that must comply with First Amendment limits."   *Intel Corp. v. Hamidi*, 71 P.3d 296, 311 (Cal. 2003) (striking injunction Intel obtained against former employee sending disgruntled emails to his former coworkers).

      *(a)*   **_Google's Speech Is Protected By The First Amendment._**

The Canadian Order requires Google to take action to remove links to specific Datalink websites from its search results provided to users in the United States.   *See* Schachter Decl., Ex. 10 (trial court opinion) ¶ 161.   The Order thus compels Google to suppress truthful speech: even where Datalink websites are otherwise relevant and responsive to a user's query, Google cannot

report in its U.S. search results the existence of sites that are readily available to the public.  *See, e.g.*, Caruso Decl., Ex. 1.  Meanwhile, other search engines, as well as many other internet sources, can freely display this information.  *See, e.g.*, *id.* Ex. 4 (showing top Bing search result for GW1000); Ex. 7 (showing top Yahoo natural search result for GW1000), Ex. 2 (Facebook posting); Schachter Decl. ¶ 13 (public availability of court orders); *id.*, Exs. 24-25 (articles and comments).

A search engine's display of search results in the order it sees fit is "fully protected First Amendment expression."  *Jian Zhang v. Baidu.com Inc.* ("*Baidu*"), 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014) (granting motion to dismiss case seeking to compel a search engine to post unwanted search results).  Because "information that is illegal in one country can be perfectly legal in others," one of the principles that guides Google's decisions on search results is that "one country should not have the right to impose its rules on the citizens of other countries."  Strait Decl.*, Ex. 6 (blogpost by Google's General Counsel entitled "A principle that should not be forgotten").  Just as newspapers have the First Amendment right to make editorial decisions about what content to print, *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974), operators of search engines possess a First Amendment right to make editorial decisions about which of the trillions of webpages on the internet to display in search results.  *Baidu*, 10 F. Supp. 3d at 435.

Unquestionably, the First Amendment protects Google's display of search results within the United States.  Relying on *Miami Herald v. Tornillo*, as *Baidu* did, the Middle District of Florida recently held that "Google's actions in formulating rankings for its search engine . . . are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication."  *See e-ventures Worldwide, LLC v. Google, Inc.*, Case No. 2:14-cv-646, 2017 U.S. Dist. LEXIS 88650, at *11-12 (M.D. Fla. Feb. 8, 2017) (granting summary judgment on First Amendment grounds).  "The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism."  *Id.* at 9; *accord Langdon v. Google Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (dismissing claim alleging that Google's PageRank search results algorithm ranked the plaintiff's webpage unfairly); *Search King Inc. v. Google Tech., Inc.*, Case No. 02-cv-1457, 2003 WL

1  21464568, at *4 (W.D. Okla. May 27, 2003) ("PageRanks are opinions—opinions of the

2  significance of particular web sites as they correspond to a search query . . . Google's PageRanks

3  are entitled to 'full constitutional protection.'") (citation omitted).

4          It does not change the First Amendment analysis that the Canadian Order directs Google

5  not to display in the U.S. links to Datalink websites that market products that allegedly violate

6  Canadian trade secret law.  *See, e.g.*, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1738 (2017)

7  (law prohibiting sex offenders from accessing social media violated First Amendment because

8  government "may not suppress lawful speech as the means to suppress unlawful speech") (quoting

9  *Ashcroft v. Free Speech Coalition*, 535 U. S. 234, 255 (2002)).  When the "quasi-property right"

10 found in trade secret law "collides" with the First Amendment, "the deeply rooted constitutional

11 right to share and acquire information" must prevail for publishers of trade secret information who

12 did not themselves wrongfully acquire or disclose the trade secret.  *O'Grady v. Superior Court*,

13 139 Cal. App. 4th 1423, 1476 (Cal. Ct. App. 2006), *as modified* (June 23, 2006) (First

14 Amendment barred Apple from subpoenaing news organizations regarding their sources of an

15 Apple product leak).

16         This has been so on the internet for nearly twenty years.  In 1999, a Michigan district court

17 determined that Ford Motor Company could not enjoin a blogger from publishing Ford's

18 confidential trade secret information leaked to him by Ford employees.  *Ford Motor Co. v. Lane*,

19 67 F. Supp. 2d 745, 753-54 (E.D. Mich. 1999).  The court concluded that "private litigants'

20 interest in protecting their vanity or their commercial self-interest simply does not qualify as

21 grounds for imposing a prior restraint."  *Id.* at 752 (quoting *Procter & Gamble Co. v. Bankers

22 Trust Co.,* 78 F.3d 219, 225 (6th Cir. 1996)).  Although the court recognized that "the reach and

23 power of the Internet raises serious legal implications, *nothing in our jurisprudence suggests that

24 the First Amendment is circumscribed by the size of the publisher or his audience.*"  *Id.* at 753

25 (emphasis added).  Absent "a confidentiality agreement or fiduciary duty between the parties,

26 Ford's commercial interest in its trade secrets and [the] … alleged improper conduct in obtaining

27 the trade secrets are not grounds for issuing a prior restraint."  *Id.  Ford* held this to be the case

28

1  even though the blog at issue actually disclosed trade secrets, unlike here, where neither Google's

2  search results nor Datalink's websites disclose trade secrets.

3        Simply put, "the First Amendment requires that the press be free to publish truthful

4  business information." *Rain CII Carbon, LLC v. Kurczy*, Case No. 12-cv-2014, 2012 WL

5  3577534, at *3, 6 (E.D. La. Aug. 20, 2012) ("Ultimately, however, this Court finds that the danger

6  of suppression of the press under the First Amendment outweighs the danger of violation of the

7  Louisiana Uniform Trade Secrets Act."). This is all Google search results do—merely report to

8  users in the United States truthful business information about the location of relevant websites.

9        *(b)*     **The Canadian Order Cannot Survive First Amendment Scrutiny.**

10        The Canadian Order has one purpose: "compelling Google to block the [Datalink]

11  defendants' websites from Google's search results world-wide." Schachter Decl., Ex. 10 (trial

12  court opinion) ¶ 159. Although the Supreme Court of Canada viewed Google's search results as

13  not implicating "freedom of expression values," Schachter Decl., Ex. 1 (SCC Op.) ¶ 48, in the

14  United States, Google's search results are indisputably "fully protected First Amendment

15  expression," *Baidu*, 10 F. Supp. 3d at 439, and entitled to "full constitutional protection," *Search*

16  *King*, 2003 WL 21464568, at *4.

17        *(i)*     **The Canadian Order Cannot Survive Strict Scrutiny.**

18        Because the Canadian Order is directed to specific content—i.e., websites published by

19  Datalink—and to a specific speaker—i.e., Google—it would only be enforceable in the United

20  States if Equustek could demonstrate that requiring Google to delist Datalink websites from U.S.

21  search results was ***narrowly tailored*** to fulfill a ***compelling interest.***[1] This is a far more stringent

22  _____

23      [1] *E.g.*, *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content. …

24  [G]overnment regulation may not favor one speaker over another.") (internal citations omitted); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) (statute distinguishing

25  between types of magazines "targets individual publications within the press" and cannot survive strict scrutiny); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (statute

26  distinguishing between labor and anti-labor protestors failed strict scrutiny because the First Amendment condemns "discrimination among different users of the same medium for

27  expression"); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936) (statute which penalized popular newspapers was unconstitutional as "a deliberate and calculated device in the guise of a

28  tax to limit the circulation of information to which the public is entitled").

1    standard than whether "the balance of convenience [is] in favour of granting the interlocutory

2    injunction or denying it," the test used in Canada.  *See* Schachter Decl., Ex. 1 (SCC Op.) ¶¶ 1, 25.

3    Because Equustek cannot satisfy its burden under the strict scrutiny standard, Google's search

4    results displayed within the United States should not be blocked by the Canadian Order.

5                                    A)     The Canadian Order Is Not Narrowly Tailored.

6           An order directed solely to Google's suppression of search results is not narrowly tailored

7    to the goal of stopping Datalink's online sales.  For an injunction on speech to be narrowly

8    tailored under strict scrutiny, there must be *no alternative measures* adequate to further the

9    compelling interest.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 542 (1976).  The restriction

10   must also be effective.  *Id.* at 567 (striking down gag order blocking national media coverage of

11   murder trial where the same information would "travel swiftly by word of mouth" in the

12   community and it is not "clear that prior restraint on publication would have protected [the

13   criminal defendant's jury trial] rights.").

14          Enforcement of the Canadian Order in the United States fails this stringent test.  First, the

15   Canadian Order is demonstrably ineffective.  This is unsurprising given that Equustek opted not to

16   seek orders against multiple other providers of internet services that also display links to the

17   enjoined Datalink websites.  *See* Schachter Decl. ¶ 17.  As the dissenting justices of the Supreme

18   Court of Canada observed, "it has not been shown that the [Canadian] Order is effective in

19   [reducing the harm to Equustek]."  Schachter Decl., Ex. 1 (SCC Op.) ¶ 79 (dissent).  This is

20   because, despite three years of Google's compliance with the Canadian Order, "Datalink's

21   websites can be found using other search engines, links from other sites, bookmarks, email, social

22   media, printed material, word-of-mouth, or other indirect means.  Datalink's websites are open for

23   business on the Internet whether Google searches list them or not."  *Id.*; *see also* Caruso Decl., Ex.

24   1 (list of active links); *Baidu*, 10 F. Supp. 3d at 441 ("[I]f a user is dissatisfied with Baidu's search

25   results, he or she 'has access, with just a click of the mouse, to Google, Microsoft's Bing, Yahoo!

26   Search, and . . . almost limitless other means of finding content on the Internet.'").

27          Although the Supreme Court of Canada incorrectly characterized Google as "the

28   determinative player in allowing the harm to occur" to Equustek, Schachter Decl., Ex. 1 (SCC

Op.) ¶ 53, the dissent correctly observed that this reasoning would equally justify orders against "the companies supplying Datalink with the material to produce the derivative products, the companies delivering the products, or . . . the local power company that delivers power to Datalink's physical address." *Id.* ¶ 71 (dissent).  Here, there is simply no proof in the record quantifying the degree to which Google "facilitates" the sale of Datalink's products.

There is also no evidence that a user conducting a search for "Datalink" or "GW1000" does not already know about the GW1000 or Datalink, and does not simply employ alternate methods to locate Datalink's websites, such as through social media posts, email solicitations, or other search engines.  But Equustek has not sought injunctions against such media, preferring instead to deputize Google alone as its means of frustrating Datalink's marketing efforts.  *See* Schachter Decl. ¶¶ 17-18.  For example, Equustek's most recent supplement to the Canadian Order referenced a Facebook link to be delisted.  *See* Schachter Decl., Ex. 19 (Aug. 17, 2016 supplemental order).  Instead of seeking removal directly from Facebook, with over a billion active users worldwide, Equustek only requested that the Canadian court compel Google to hide Facebook's link from Google's search results.  *Id.*  But the Facebook link remains available.  Caruso Decl., Ex. 2 (printout of Facebook link and Datalink Facebook page).  Likewise, Equustek appears to have taken no action against any press articles and comments available online that publish the Datalink URLs, or against Amazon, which lists the GW1000 for sale.  *See* Schachter Decl. ¶ 18, Ex. 24-25 (Techdirt and Reddit posts); Caruso Decl., Ex. 6 (screenshots of Amazon.com search results and GW1000 listing).

Second, Equustek could have sought far narrower and less speech-restrictive alternatives than seeking to compel Google to censor truthful information from its U.S. search results.  *See, e.g.*, *O'Grady*, 139 Cal. App. 4th at 1470-75 (rejecting Apple's attempts to subpoena media for identity of corporate leaker, particularly when Apple had not completed an internal investigation).  Here, as in *O'Grady*, Equustek failed to demonstrate exhaustion of all plausible means to make Datalink "cease operating or carrying on business through any website."  Schachter Decl., Ex. 5 (Dec. 12, 2013 Order).  For example, Equustek could have, but did not, seek action against Datalink's domain registrars or web hosts, who actually have the power to remove the Datalink

1  domains from the web (which, in turn, would eliminate the links from being indexed in search

2  results).  *See* Schachter Decl.  ¶ 17; Strait Decl. ¶¶ 7, 9.

3      Tellingly, many of the websites Google was ordered to delist can still be directly accessed

4  by internet users copying into their own internet browsers links that remain publicly available,

5  including even *from the Canadian courts websites*.  *See* Caruso Decl., Ex. 1; Schachter Decl. ¶ 13.

6  If blocking all public knowledge of and access to the links were actually as critical as alleged,

7  Equustek should have at least asked that they be redacted or sealed in the Canadian proceedings; it

8  did not.  *See* Schachter Decl. ¶ 16.

9      Further, although Equustek sought an asset freeze from the Canadian trial court over

10  certain of the Datalink defendants' assets in France, the Canadian court held that Equustek would

11  need to take action against those French assets *in France*, not Canada.  *See* Schachter Decl., Ex. 26

12  (2016 BCCA 190) ¶ 24; *see also id.,* Ex. 26 (2016 BCCA 190) ¶ 19 (denying application to freeze

13  assets because the alleged harm to Equustek was not "sufficiently great to outweigh the *prima*

14  *facie* right of the proposed defendant to have full control over his assets").  But Equustek does not

15  appear to have filed any action in France.  *Id.*, Ex. 1 (SCC Op.) ¶ 81 (dissent) ("We see no reason

16  why Equustek cannot do what the Court of Appeal urged it to do [and pursue Datalink's assets in

17  France].").  In addition, Equustek could "initiate contempt proceedings [against Datalink] in

18  France or in any other jurisdiction with a link to the illegal websites." *Id.*

19      Because Equustek failed to pursue other more effective and less speech-restrictive means

20  of eliminating Datalink's alleged trade-secret-related content from the internet enforcement of the

21  Canadian Order fails the narrow tailoring requirement.

22              B)      Enforcing Google's Compliance With The Canadian
                       Order Furthers No Compelling Interest.
23

24      Enforcement of the Canadian Order independently fails strict scrutiny because restricting

25  Google's search results does not further a compelling interest.  Google does not dispute that the

26  Canadian orders requiring the actual *Datalink defendants* to cease operation of the Datalink

27  websites and cease selling infringing products would not violate the First Amendment if enforced

28  in the United States.  Google supports the issuance of appropriate preliminary injunctions against

1   alleged violators of trade secrets.

2        But Google is not accused of infringement in the Canadian action against Datalink or of

3   disclosing Equustek's trade secrets, Google is not a party to that lawsuit, and Google is not an

4   agent of Datalink.  Schachter Decl. ¶ 3, Ex. 2; Strait Decl. ¶ 10.  Rather, Google is, in the words of

5   the Canadian court, merely an "innocent bystander."  Schachter Decl., Ex. 10 (trial court op.) ¶¶

6   113, 156; *see also id.*, Ex. 1 (SCC Op.) ¶ 67 (dissent) ("Google has not aided or abetted Datalink's

7   wrongdoing; it holds no assets of Equustek's, and has no information relevant to the underlying

8   proceedings.").  It fulfills no compelling interest to require that Google (and no one else) pretend

9   that the Datalink websites no longer exist, when they remain readily available via various other

10  means, as described above.

11                    (ii)   *The Canadian Order Cannot Survive Intermediate Scrutiny.*

12       Strict scrutiny applies here because of the content-specific and speaker-specific nature of

13  the Canadian Order.  However, even if the lesser standard of intermediate scrutiny were applied,

14  enforcement of the order still fails.  Intermediate scrutiny applies to legislative or executive

15  restrictions on speech that are content-neutral—i.e., made "without reference to the content of the

16  regulated speech," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) (internal

17  quotation marks and citation omitted), or "commercial speech" that merely "propose[s] a

18  commercial transaction," *e.g.*, *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983).

19  Accordingly, it is not appropriate here.  But even it were, enforcement of the Canadian Order

20  would still be impermissible.

21       Under the intermediate scrutiny test, a restriction must be "narrowly tailored to serve an

22  important or substantial state interest."  *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S.

23  469, 478 (1989) (internal quotation marks and citation omitted).  Even if blocking search results to

24  a website that offers products violating trade secret law in Canada constituted a substantial

25  governmental interest, the Canadian Order fails intermediate scrutiny due to its lack of narrow

26  tailoring, as discussed above in Section (i)(A).  *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552

27  (2011) (striking down Vermont pharmaceutical advertising regulation as invalid for lack of narrow

28  tailoring whether evaluated under strict or intermediate scrutiny); *Matal v. Tam*, 137 S. Ct. 1744,

1764 (2017) (unanimous court striking down trademark disparagement clause under strict scrutiny and plurality opinion explaining why it also failed intermediate scrutiny).

To sustain a proposed restriction on commercial speech, the party advocating for the restriction "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (internal quotation marks, citation omitted). "This burden is not satisfied by mere speculation or conjecture." *Id.* Here, the record is devoid of any evidence that the Canadian Order "alleviate[s]" Datalink's sales "to a material degree." *Id.* Moreover, Equustek's actions surrounding the Canadian Order have been "so pierced by exemptions and inconsistencies" (*see* Section (i)(A)) that Equustek "cannot hope to exonerate" the Canadian Order. *Id.* at 190 (inconsistent standards for casino advertising failed intermediate scrutiny); *see also Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488 (1995) (banning beer labels from publishing alcohol content, while permitting wine and spirit labels to publish the same information, failed intermediate scrutiny). Given the significant gap between the Canadian Order against Google alone, and the more effective and targeted actions Equustek could have sought to stop Datalink's "ongoing sale of the GW1000 on the internet," *see* Schachter Decl., Ex. 10 (trial court opinion) ¶ 152, enforcement of the Canadian Order in the U.S. would fail even intermediate scrutiny.

2. Enforcement Of The Canadian Order Would Violate Section 230 Of The Communications Decency Act.

(a) *Section 230 Immunizes Internet Service Providers From Liability For Other Speakers' Content.*

In 1996, Congress passed the Communications Decency Act ("CDA"), which establishes that it is the "policy of the United States" to "promote the continued development of the Internet and other interactive computer services and other interactive media" and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1)-(2). Congress's express restriction on "Federal or State regulation" of U.S. internet companies (*id.*) was not intended to permit foreign nations to interfere with the express policies of the United States government.

1   The CDA provides legal immunity to providers of interactive online service for content

2   created by others:  "No provider or user of an interactive computer service shall be treated as the

3   publisher or speaker of any information provided by another information content provider." 47

4   U.S.C. § 230(c)(1).  As the Ninth Circuit has explained, "Congress made a policy choice . . . not to

5   deter harmful online speech through the separate route of imposing tort liability on companies that

6   serve as intermediaries for other parties' potentially injurious messages."  *Carafano v.*

7   *Metrosplash.com., Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (quoting *Zeran v. America Online*,

8   129 F.3d 327, 330 (4th Cir. 1997)).  The Canadian Order compelling injunctive relief against

9   Google based on another provider's message offering the accused product for sale directly

10  contravenes the CDA.  *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)

11  (holding that the CDA forecloses injunctive relief "predicated on Facebook's decisions to allow or

12  to remove content from its website"); *accord Asia Econ. Inst. v. Xcentric Ventures LLC*, Case No.

13  10-cv-01360, 2011 WL 2469822, at *7 (C.D. Cal. May 4, 2011).

14  The CDA expressly preempts inconsistent state law, 47 U.S.C. § 230(e)(3), which includes

15  state trade secret law, *Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102, 1107-08, 1118-19 (9th Cir.

16  2007) (holding that Section 230 only exempts federal intellectual property laws from preemption).

17  The Ninth Circuit's reasoning that "permitting the reach of any particular state's definition of

18  intellectual property to dictate the contours of this federal immunity would be contrary to

19  Congress's expressed goal of insulating the development of the Internet from the various state-law

20  regimes," *id.* at 1118, applies with at least equal force to foreign regimes.  Because Equustek's

21  action is grounded only in *Canadian* trade secret law (not U.S. federal intellectual property law),

22  the CDA renders the Canadian Order against Google for speech (i.e., search results) unenforceable

23  in the United States.

24  *(b)*      *Google is Eligible for Section 230's Immunity.*

25  Enforcement of the Canadian Order for search results returned to users within the United

26  States necessarily treats Google, an interactive computer service, as the speaker of content

27  provided by Datalink—i.e., Datalink's offers for sale.  This violates Section 230's civil immunity.

28  *First*, Google is an interactive computer service.  Section 230 defines "interactive

1  computer service" to mean any information service providing access to the Internet.  47 U.S.C.

2  § 230(f)(2).  "[T]here is no doubt that Google qualifies as an 'interactive computer service.'"

3  *Parker v. Google Inc.*, 422 F.Supp.2d 492, 501 (E.D. Pa. 2006); *accord, e.g.*, *O'Kroley v.*

4  *Fastcase, Inc.*, 831 F. 3d 352, 355 (6th Cir. 2016) ("Google is an interactive computer service.").

5       *Second*, Datalink, not Google, supplies the content of Datalink's websites.  The fact that

6  Google Search results contain snippets from those websites does not transform the snippets into

7  content created by Google, or even violations of trade secret law.  *See Kimzey v. Yelp!*, 836 F.3d

8  1263 (9th Cir. 2016)*; O'Kroley*, 831 F. 3d at 355 (affirming dismissal of case against Google

9  because the act of creating search results based on third-party content did not transform it into a

10  content provider).

11       *Third*, enforcement of the Canadian Order seeks to treat Google as if it were the speaker or

12  publisher of the contents of Datalink's sites by enjoining Google's ability to display accurate

13  search results about those webpages.  The Canadian Order "boil[s] down" to forcing Google "to

14  exclude material that third parties seek to post online."  *Barnes v. Yahoo!, Inc*., 570 F.3d 1096,

15  1103 (9th Cir. 2009) (holding that Section 230 prevented Yahoo's liability to a woman whose ex-

16  boyfriend had created an unauthorized Yahoo profile of her).  Such an injunction inherently

17  renders Google liable, treating it "as a publisher of the content it failed to remove."  *Id.*

18       As a federal court recently explained regarding Facebook's alleged use as a forum for

19  terrorist activities: "judicial decisions in the area consistently stress that decisions as to whether

20  existing content should be removed from a website fall within the editorial prerogative" of Section

21  230.  *Cohen v. Facebook, Inc.*, Case 16-cv-5157, 2017 WL 2192621, at *12 (E.D.N.Y. May 18,

22  2017); *accord Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016); *Sikhs*

23  *for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015).  Google's listing

24  of relevant Datalink websites in search results returned in the U.S. is likewise within Google's

25  protected editorial prerogative, and thus expressly immunized by Congress.

26             3.    The Canadian Order Is Incompatible With International Comity.

27                (a)    *Federal Courts Need Not Enforce Foreign Court Injunctions*
                        *Requiring United States Compliance.*

28

It is a foundational principle of jurisprudence that each country is the master of its own territory. *Hilton v. Guyot*, 159 U.S. 113, 163 (1895) ("No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived."). "The extent to which the law of one nation . . . shall be allowed to operate within the dominion of another nation, depends upon . . . 'the comity of nations.'" *Id.* (reversing order upholding foreign judgment). Pursuant to the principle of comity, foreign injunctions are *not* generally enforceable in the United States. *See Medellin v. Texas*, 552 U.S. 491, 522 (2008).[2] This is because "no nation will suffer the laws of another to interfere with her own to the injury of her citizens." *Hilton*, 159 U.S. at 164. Yet that is precisely what enforcement of the Canadian Order would do—"purport to place the [Canadian] court in the position of supervising the law enforcement activities of a foreign sovereign nation against its own citizens on its own soil." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 78 (3d Cir. 1994) (vacating injunctive portions of U.S. court order directed against Republic of Philippines).

Foreign courts ordinarily refrain from issuing worldwide injunctions because they only have jurisdiction to prescribe "conduct that, wholly or in substantial part, takes place within [or affects] its territory." *See* Restatement (Third) of Foreign Relations Law § 402 (1987); *see also, e.g.*, *Eduardo v. Google Brasil Internet Ltd.*, Appeal No. 1054138-03.2014, slip. op. at 110, Sao Paulo State Court of Appeal (Apr. 5, 2017)) ("The removal of the content shall be local and not global. . . . [A]lthough the respondent is a global company, this court only has jurisdiction over the national territory.") (attached to Caruso Decl. as Ex. 7). This is because "each sovereign nation has the sole jurisdiction to prescribe and administer its own laws, in its own country, pertaining to its own citizens, in its *own* discretion." *Republic of Philippines*, 43 F.3d at 79.

Recognizing these same principles, the Canadian Attorney General intervened in Google's appeal to the Supreme Court of Canada and argued that the Canadian Order "constitutes an

---

[2] The enforcement of foreign judgments is governed by state law. *E.g.*, *Bank of Montreal v. Kough*, 612 F.2d 467, 469 (9th Cir. 1980). But, like most states, California statutes address only foreign monetary judgments, and not foreign injunctions. *See* Cal. Civ. Proc. Code § 1715(a). Thus, California courts look to general principles of comity, particularly the Restatement of the Foreign Relations Law of the United States, when evaluating foreign injunctions. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1213 (9th Cir. 2006).

1   impermissible exercise of extraterritorial enforcement jurisdiction."  Schachter Decl., Ex. 22

2   Intervening Brief of Attorney General of Canada) ¶ 1.  Equustek's counsel responded to Google's

3   and the Attorney General's concerns by repeatedly arguing it was up to the courts of the United

4   States to rule on American substantive law and improper for Canadian courts to predict how a

5   U.S. court might rule.  *Id.*, Ex. 23 (SCC Argument Tr.) at 111-12, 115 (arguing that the

6   enforceability of the Canadian Order "in the United States is a question for U.S. courts and has

7   nothing to do with this case," and that after the Canadian court's decision, "the American courts

8   [can] then tell us what the law really is.").

9          Accepting Equustek's arguments, the Supreme Court of Canada dismissed all concerns

10   about Google's rights under U.S. law by affirming the Canadian Order.  Schachter Decl., Ex. 1

11   (SCC Opinion) ¶¶ 45-48.  According to that court, no "freedom of expression issues" tipped "the

12   balance of convenience towards Google" because a worldwide delisting injunction did not "on its

13   face, engage freedom of expression values," and Google's concern "that the order could not have

14   been obtained in a foreign jurisdiction, [was] theoretical."  *Id.* ¶¶ 44-45.

15         Because the Canadian courts ignored principles of international comity, corrective action

16   by this Court is required.

17              (b)    *Foreign Injunctions Repugnant To United States Policy Are*
                       *Unenforceable In The United States.*

18

19         A foreign injunction is not enforceable in the United States unless it independently satisfies

20   this country's standards for injunctive relief.  *See* Restatement (Fourth) of Foreign Relations Law:

21   Jurisdiction ("Restatement") § 408 (2014) (comments).  Foreign judgments are thus unenforceable

22   where the "claim for relief on which the judgment is based is repugnant to the public policy of this

23   state or of the United States."  Cal. Civ. Proc. Code § 1716(c)(3); *La Ligue Contre Le Racisme Et*

24   *L'Antisemitisme*, 433 F.3d at 1214 (same); Restatement §§ 404, 408 (2014) (same).  Foreign

25   judgments violating the First Amendment are the paradigm of repugnancy to United States public

26   policy.  *See, e.g.*, Restatement, § 404 TD No. 1 (2014) (comment) ("states have withheld

27   recognition on public-policy grounds most often when the foreign judgment conflicts with the

28   levels of protection that the U.S. Constitution mandates for freedom of speech and the press");

1   *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 480 (2d Cir. 2007) ("Foreign judgments

2   that impinge on First Amendment rights will be found to be 'repugnant' to public policy.").

3       Refusing enforcement here is not discretionary.  "[T]his Court may not enforce a foreign

4   order that violates the protections of the United States Constitution by chilling protected speech

5   that occurs simultaneously within our borders."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

6   *L'Antisemitisme*, 169 F. Supp. 2d 1181, 1192 (N.D. Cal. 2001), *rev'd on other grounds*, 433 F.3d

7   1199, 1214 (9th Cir. 2006).  It is "*constitutionally mandatory*" to decline to enforce foreign

8   judgments contrary to the First Amendment.  *Bachchan v. India Abroad Publications Inc.*, 154

9   Misc. 2d 228, 231, 585 N.Y.S.2d 661, 662 (N.Y. Sup. Ct. 1992) (emphasis added); *accord*

10  *Matusevitch v. Telnikoff*, 877 F. Supp. 1, 4 (D.D.C. 1995), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998);

11  *Abdullah v. Sheridan Square Press, Inc.*, Case No. 93-cv-2515, 1994 WL 419847, at *1 (S.D.N.Y.

12  May 4, 1994).  Because enforcement of the Canadian Order violates the policies of the United

13  States embodied in the First Amendment and the Communications Decency Act, Google is likely

14  to succeed in proving that the Canadian Order is unenforceable in the United States.

15      Thus, as this Court has previously recognized, "[a]bsent a body of law that establishes

16  international standards with respect to speech on the Internet and an appropriate treaty or

17  legislation addressing enforcement of such standards to speech originating within the United

18  States, the principle of comity [to a foreign court's injunction] is outweighed by the Court's

19  obligation to uphold the First Amendment."  *Yahoo!*, 169 F. Supp. 2d at 1193.

20      **B.**    **The Remaining Preliminary Injunction Factors Weigh In Favor Of Enjoining**
        **Enforcement Of The Canadian Order In The United States.**

21

22      After demonstrating either a likelihood of success on the merits or a serious question going

23  to the merits, the party seeking a preliminary injunction must show that (a) it is likely to suffer

24  irreparable harm in the absence of preliminary relief, (b) the balance of equities tips in his favor,

25  and (c) a preliminary injunction is in the public interest.  *E.g.*, *Arc of California*, 757 F.3d at 983.

26  Because each factor clearly favors Google, an injunction against enforcement of the Canadian

27  Order is appropriate.

28

1    *Irreparable Harm.*  Google has been forbidden by a Canadian court from exercising its

2    First Amendment rights in the U.S.  It is prohibited from engaging in its lawful search engine

3    activities and providing accurate search results about publicly available information on the internet

4    within the geographic borders of the United States.  While the Supreme Court of Canada viewed

5    this result as not an "inconvenience" for Google, Schachter Decl., Ex. 1 (SCC Op.) ¶ 43, in the

6    United States, the "loss of First Amendment freedoms, for even minimal amounts of time,

7    unquestionably constitutes irreparable injury."  *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828

8    (9th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  Absent

9    relief from this Court, such irreparable harm will continue.  Strait Decl. ¶ 14.  Google cannot

10   violate the Canadian Order without risking contempt in that jurisdiction.  *See, e.g.*, *Shuttlesworth*,

11   394 U.S. at 158 n.7 ("[I]n face of the prohibition of an injunctive order … the proper procedure

12   [is] to seek judicial review of the injunction and not to disobey it, no matter how well-founded

13   [plaintiffs'] doubts might be as to its validity.").

14   *Balance of the Equities.*  The scales of equity sharply tip in favor of upholding

15   fundamental First Amendment values.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208

16   (9th Cir. 2008).  This is in sharp contrast to Canada, where its Supreme Court concluded that it did

17   "not see freedom of expression issues being engaged in any way that tips the balance of

18   convenience towards Google in this case."  Schachter Decl., Ex. 1 (SCC Op.)  ¶ 45.  When the

19   balance of equities "tips sharply" in the plaintiff's favor—as it does here—an injunction is proper.

20   *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014); *M.R. v. Dreyfus*,

21   697 F.3d 706, 725 (9th Cir. 2012); *Alliance for the Wild Rockies*, 632 F.3d at 1135.  The scales

22   further favor a preliminary injunction because, if enforced in the United States, the Canadian

23   Order will trample not only Google's First Amendment freedoms, but also the will of Congress, as

24   expressly articulated in the CDA.  *See, e.g.*, *Arizona Dream Act Coalition v. Brewer*, 757 F.3d

25   1053, 1069 (9th Cir. 2014) (equities favor enjoining violation of federal law).

26   The balancing of equities must also account for the relative imposition of burdens on the

27   parties.  The Canadian court put the burden on Google, a non-party, to disprove Equustek's rights

28   in every country outside of Canada, rather than on Equustek, the plaintiff, to prove its entitlement

1    to removal of search results in each country in which it sought removal.  *See* Schachter Decl., Ex.

2    1 (SCC Op.) ¶¶ 44-46.  Even beyond First Amendment and CDA concerns, "[t]he real

3    inconvenience comes from conflict of laws and the potential for global takedown orders coming

4    from across the planet."  Caruso Decl., Ex. 8 (Michael Geist, "Global Internet Takedown Orders

5    Come to Canada: Supreme Court Upholds International Removal of Google Search Results" (June

6    28, 2017)).  The Canadian Order inequitably imposes on non-party internet companies a burden

7    unprecedented in American jurisprudence and threatens what information U.S. internet users can

8    access.[3]

9        By contrast, entering a preliminary injunction will impose negligible, if any, costs on

10   Equustek.  Google's global compliance with the Canadian Order for the past three years has

11   proven ineffective at stopping Datalink's "ongoing sale of the GW1000 on the internet," which

12   appears to continue today.  Schachter Decl., Ex. 10 (trial court opinion) ¶ 152; Strait Decl. ¶¶ 12-

13   14; Caruso Decl., Exs. 1-6.  Google would continue to block search results for users accessing

14   Google's search services *in Canada* so long as the Canadian court's December 2012 order against

15   Datalink remains in place.  *See* Strait Decl. ¶ 14.  And Equustek remains free to take action against

16   domain registrars and web hosts.  This will incentivize Equustek to seek more targeted (and

17   available) extraterritorial relief, if it believes it necessary to do so.  *See, e.g.*, Strait Decl. ¶ 7

18   (explaining that hosts and registrars can remove Datalink websites altogether).

19       *Public Interest.*  There is a "significant public interest in upholding First Amendment

20   principles."  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1129 (9th Cir. 2011).  It similarly

21   "is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the

22   requirements of federal law."  *Arizona Dream Act Coalition*, 757 F.3d at 1069 (citation omitted).

23   Enjoining the enforcement of the Canadian Order within the geographic boundaries of the United

24   States, serves the "public interest in upholding free speech and association rights," *Farris v.*

25

26   _____

     [3] As one Canadian law professor observed: "what happens if a Chinese court orders it to remove
     Taiwanese sites from the index? Or if an Iranian court orders it to remove gay and lesbian sites
27   from the index?"  *Id.*  The actual burden of compliance with the Canadian Order goes far beyond
     the economic cost of Google removing from search results the hundreds of websites ordered by
28   the Canadian court.

1   *Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (citation omitted), as well as the "public interest

2   represented in . . . the Constitution's declaration that federal law is to be supreme," *American*

3   *Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009).

4                                        **CONCLUSION**

5          The Canadian Order cannot be enforced in the United States consistent with the

6   Constitution's robust protections for free speech, the immunity Congress effected through the

7   Communications Decency Act, and principles of international comity.  With the balance of

8   equities and public interest strongly favoring Google, this Court should issue a preliminary

9   injunction against enforcement of the Canadian Order in the United States.

10

11  DATED:  July 26, 2017                QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
12

13

14                                       By
                                            Margret M. Caruso
15                                          Carolyn M. Homer

16                                       *Attorneys for Plaintiff*
                                         *Google Inc.*
17

18

19

20

21

22

23

24

25

26

27

28