1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Margret M. Caruso (CA Bar No. 243473)
2      margretcaruso@quinnemanuel.com
     Carolyn M. Homer (CA Bar No. 286441)
3      carolynhomer@quinnemanuel.com
     555 Twin Dolphin Drive, 5th Floor
4    Redwood Shores, California 94065-2139
     Telephone:     (650) 801-5000
5    Facsimile:     (650) 801-5100

6    *Attorneys for Plaintiff*
     *Google Inc.*

7

8                       UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
9                            SAN JOSE DIVISION

10   **Google Inc.**,                          Case No. 5:17-cv-04207-EJD

11              Plaintiff,                      DECLARATION OF MARGRET M. CARUSO IN
                                                SUPPORT OF GOOGLE INC.'S MOTION FOR
12        vs.                                   PRELIMINARY INJUNCTIVE RELIEF

13                                              HEARING
     **Equustek Solutions Inc., Clarma**
14   **Enterprises Inc.**, and **Robert Angus**,   DATE:  September 14, 2017
                                                TIME:  9:00 a.m.
15              Defendants.                     PLACE: Courtroom 4 - 5th Floor
                                                JUDGE: Hon. Edward J. Davila
16

17

18

19

20

21

22

23

24

25

26

27

28

I, Margret M. Caruso, hereby declare as follows:

1.      I am a Partner of the firm Quinn Emanuel Urquhart & Sullivan LLP and counsel for Plaintiff Google Inc. ("Google") in this case.  I make this declaration of personal, firsthand knowledge except as otherwise noted, and if called and sworn as a witness, I could and would testify competently as follows.

**Datalink Internet Presence**

2.      Attached as **Exhibit 1** is a list of links to websites that Google was ordered to delist that were still live as of July 25, 2017.  As the list of 41 links reveals, approximately one third of the websites Google was ordered to delist remain active.  This list of active sites includes links to Facebook and LinkedIn webpages.

3.      Attached as **Exhibit 2** is a true and correct copy of a screenshot dated July 23, 2017, which reflects one of the Facebook posts ordered delisted (*see* Schachter Decl., Ex. 19) and Datalink's Facebook page.

4.      As one example of a still live Datalink website that Google was ordered to delist, attached as **Exhibit 3** is a true and correct copy of a screenshot dated July 22, 2017 from http://www.datatechgateways.com/.

5.      My search for "GW1000" on Bing's search engine on July 26, 2017 yielded a top search result for Datalink's website at http://www.datatechgateways.com/gw1000-abeip/. Attached as **Exhibit 4** is a true and correct copy of a screenshot showing that search result.

6.      My search for "GW1000" on Yahoo's search engine on July 26, 2017 yielded a top search result for Datalink's website at http://www.datatechgateways.com/gw1000-abeip/. Attached as **Exhibit 5** is a true and correct copy of a screenshot showing that search result.

7.      My search for "Datalink GW1000" on Amazon's search feature on July 23, 2017 yielded a top search result for a sale of a Datalink product at https://www.amazon.com /DATALINK-GW1000-ABEIP-ETHERNET-SWITCH-NEW/dp/B071CPNVPY /ref=sr_1_1?ie=UTF8&qid=1500764524&sr=8-1&keywords=datalink+gw1000.  Attached as **Exhibit 6** are true and correct copies of screenshots showing that search result and images of the listing.

**Foreign Court Opinion And Other Authority**

8.      Attached as **Exhibit 7** is a true and correct copy of an English translation provided to Google of the Brazilian Opinion, *Eduardo v. Google Brasil Internet Ltd.*, Appeal No. 1054138-03.2014, Sao Paulo State Court of Appeal (Apr. 5, 2017).  The original Portuguese version is available from JusBrazil (which I understand to be a private Brazilian legal website similar to Westlaw) at https://tj-sp.jusbrasil.com.br/jurisprudencia/453974382/apelacao-apl-10541380320148260100-sp-1054138-0320148260100/inteiro-teor-453974401?ref=juris-tabs# (last accessed July 24, 2017).

9.      Attached as **Exhibit 8** is a true and correct copy of an article as printed on July 22, 2017, by Michael Geist entitled *Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results* (June 28, 2017), available at http://www.michaelgeist.ca/2017/06/global-internet-takedown-orders-come-canada-supreme-court-upholds-international-removal-google-search-results/.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this day in Redwood Shores, California.


DATED:  July 26, 2017

_____
Margret M. Caruso

DECLARATION OF MARGRET M. CARUSO

# EXHIBIT 1

| Still-Active Websites (As Of July 25, 2017) That Google Was Compelled To Remove From Its Global Search Results Pursuant To The June 2014 Order & Supplemental Delisting Orders Against Google | |
|---|---|
| **Row #** | |
| 1 | http://www.datalink-gateways.com/ |
| 2 | http://www.datalink-networks.com/ |
| 3 | http://www.datalinkconverters.com/ |
| 4 | http://www.datalinkgateways.com/ |
| 5 | http://www.datalinkinterfaces.com/ |
| 6 | http://www.datatechgateways.com/ |
| 7 | https://twitter.com/industrialautom |
| 8 | https://plus.google.com/+Ethernetallenbradleydhplus |
| 9 | https://plus.google.com/100622588794623429776 |
| 10 | https://plus.google.com/101434677706598294346 |
| 11 | https://plus.google.com/102249277171740546645 |
| 12 | https://plus.google.com/116942923801497706626 |
| 13 | https://kinja.com/datalinkgw1000 |
| 14 | http://datalinkgw1000.kinja.com/gw1000-dhpe-ethernet-df1-dh-1721122330 |
| 15 | http://www.iebmedia.com/index.php?id=10610&parentid=52&themeid=222&hpid=4&showdetail=true&bb=1 |
| 16 | http://www.manta.com/c/mx2zsrq/datalink-technologies-gateways-inc |
| 17 | http://www.manta.com/c/mx4dg23/datalink-technologies-gateways |
| 18 | http://www.manta.com/cp/mx450tw/555112b2bc36f6db05ded5bf/datalink-gw1000-dhp1-df1-to-data-highway-plus-dh-converter |
| 19 | http://www.manualslib.com/manual/665918/Ili-Datalink-Gw1000.html |
| 20 | http://www.modbus.org/viewdevice.php?id=335 |
| 21 | https://fr-fr.facebook.com/datalinkgw1000abeip/ |
| 22 | https://vi-vn.facebook.com/datalinkgw1000abeip/ |
| 23 | https://www.facebook.com/permalink.php?id=779277212121133&story_fbid=782111681837686 |
| 24 | https://www.linkedin.com/company/datalink-technologies-group-inc |
| 25 | http://datalinkcontrollers.datatechgateways.com/ |
| 26 | http://516493715498262299.weebly.com/about.html |
| 27 | http://datalinkgw1000.kinja.com/ |
| 28 | http://datalinkgw1000.kinja.com/gw1000-abeip-1720388351 |
| 29 | http://manualzz.com/doc/2989233/gw1000-user-manual |
| 30 | http://www.artipot.com/articles/1853538/datalink-gw1000-df1-ab-ethernet-ethernet-ipconverter-to-allen-bradleyss-datahighway-plus-dh-dh-485.htm |
| 31 | http://www.iebmedia.com/index.php?id=10947&parentid=52&themeid=226&hid=57662&hpid=4&showdetail=true&sup=57662&bb=&nbb= |
| 32 | http://www.manta.com/cp/mx450tw/5551180059146d3f665d05fb/datalink-gw1000-abeip-ethernet-ip-to-data-highway-plus-converter |
| 33 | http://www.mfgpages.com/company/Datalink-Technologies-in-WASHINGTON-USA-10168500/ |

| | Still-Active Websites (As Of July 25, 2017) That Google Was Compelled To Remove From Its Global Search Results Pursuant To The June 2014 Order & Supplemental Delisting Orders Against Google |
|---|---|
| Row # | |
| 34 | http://www.sooperarticles.com/shopping-articles/electronics-articles/datalink-gw1000-alternative-allen-bradleys-1784-u2dhp-dh-interface-card-1394191.html |
| 35 | https://www.facebook.com/datalinkgw1000abeip/ |
| 36 | https://www.facebook.com/datalinkgw1000abeip/posts/782453511803503 |
| 37 | https://www.facebook.com/datalinkgw1000abeip/posts/889923767723143 |
| 38 | http://datalinkgw1000.kinja.com/datalink-gw1000-multi-protocol-converterinterfacing-n-1723096976 |
| 39 | http://www.iebmedia.com/wireless.php?id=11042&parentid=52&themeid=225&hid=57662&hpid=4&showdetail=true&sup=57662&bb=&nbb= |
| 40 | https://www.facebook.com/datalinkgw1000abeip/posts/782111681837686 |
| 41 | http://www.automation.com/product-showcase/gw1000-abeip-allen-bradly-data-high-way-plus-converter |

# EXHIBIT 2

facebook

Sign Up

Email or Phone          Password

Forgot account?

 **DataLink Technologies**
January 17, 2015 ·

DataLink GW1000 DH+/DH-485 Factory resetting option

Q: How do I reset my GW1000 to its factory default settings?

A: Here is the procedure: (It applies to all modules DataLink GW1000-ABEIP, Ethernet/IP converter to DH+, DataLink GW1000-DHP1, DF1 to DH+; GW1000-ModTCP, etc)
· Power on the unit and immediately depress and hold in the CONFIG button.
· Continue holding the CONFIG button
· While still holding the CONFIG button, the STATUS led will go solid RED for about 5 seconds, and then rapidly blink RED 3 times. Release the CONFIG button now.
· Power down and re-power the unit at this time.
· Log in at default IP address 192.168.1.111 (you may need to temporarily change your laptop's IP address to the same network segment. ie. change your laptop address to 192.168.1.100 for example. If you have a spare independent network hub, or an ethernet crossover cable, this would be the best option so as not to disrupt your network.

The DataLink GW1000 DH+/DH-485 is an easy, low cost DH+ bridge/converter that has many protocol options which include AB's DF1 bridge to AB's Datahighway Plus (DH+), ASCII converter to DH+. Many customers most like our DataLink GW1000-ABEIP, Ethernet gateway to Allen-Bradley Datahighway Plus DH+. Another option is Modbus RTU in the GW1000-DHPM or the GW1000- ModTCP IP with Ethernet functionality.

The DataLink GW1000 is ideal for its flexible communications between serial Modbus RTU, ASCII, DF1 USB RS232 devices to AB Ethernet/IP PLCs on any Datahighway Plus / DH+ nodes including SLC504s, AB PLC5, Panel views / Panelview Plus, and DH+ ControlLogix gateway (1756-DHRIO / 1756-ENET).

The DataLink GW1000 has similar functionality to the AB 1784 interface cards which include the 1784-PCMK, 1784-U2DHP, 1784-PKTX, 1784-KTX, & 1770-KF2 converter and the Pro Soft Technologies AN-X2-AB-DHRIO.

English (US) · Español · Português (Brasil) · Français (France) · Deutsch



Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More ▾
Facebook © 2017



# facebook

**Sign Up**

Email or Phone          Password

Forgot account?





## DataLink Technologies
**@datalinkgw1000abeip**

Home

Posts

Photos

About

Community

**Create a Page**

👍 Like     ↪ Share     ✏ Suggest Edits     •••More

### Posts



**DataLink Technologies**
September 25, 2015 · 🌐

DataLink Technologies GW1000-ABEIP, alternative to 1784 Controllogix for RSLINX DH+ PLC Programming.

Q: I'm am looking for an inexpensive way to do some PLC programming with RSLINX to some SLC 504s on DH+. AB has recommeded the 1784 Controllogix Gateway or the 1784-U2DHP. Would the GW1000-ABEIP work in this application?

A: Yes, the GW1000-ABEIP is a great option allowing you up to 5 Ethernet connection to up to 77 nodes on DH+ You can program your SLC 504 via RSLINX on Ethe...

See More



**DataLink GW1000-ABEIP: Ethernet Data Highway Plus / DH+ Converter**

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ &...

WWW.ETHERNET-DATAHIGHWAYPLUS.COM

👍 Like     💬 Comment     ↪ Share

Md Forhad likes this.

**Comments**

---

### Industrial Company



**Community**                    See All

👍 14 people like this

📶 13 people follow this

**About**                        See All

📞 (513) 283-0567

🌐 www.ethernetip-datahighwayplus.com

🏢 Industrial Company

**People**                          >

**14** likes

**People Also Like**

**17slash**
Company

**0key**
Science, Technology & Engineering

**Infusionsoft Consultant**
Website

English (US) · Español · Português (Brasil) · Français (France) · Deutsch

+

Privacy · Terms · Advertising · Ad Choices ▷ Cookies · More ▾



**DataLink Technologies**
September 25, 2015 · 🌐

The GW1000-ABEIP is a great alternative to the 1784-U2DHP at a low cost of $1,250 USD List

👍 Like          💬 Comment

Md Forhad likes this.

**Comments**

See All

---

**Photos**



See All

---

**Posts**

**DataLink Technologies**
September 22, 2015 · 🌐

http://www.ethernet-datahighwayplus.com/

**DataLink GW1000 DF1 AB Ethernet & Ethernet/IP to DH+ & DH-485**

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

ETHERNET-DATAHIGHWAYPLUS.COM

👍 Like          💬 Comment          ➤ Share



**DataLink Technologies**
September 14, 2015 · 🌐



DataLink Technologies GW1000-ABEIP USB DH+: Alternative 1784-U2DHP and obsolete1784-PKTX / 1784-PCMK

Q: I just bought a new PC and its has no PCI slot for my 1784-PKTX. Allen-Bradley recommends the 1784-U2DHP but I would like to look for a more economical way to program my RSLINX & LOGIX. Would the GW1000 provide this functionality.

A: Either the GW1000-DHP1 (DF1 RSLINX 1770-KF2 driver) or the GW1000-ABEIP (RSLINX AB Ethernet Driver) will work great allowing your to perfor...

See More

---

### DataLink Gateways GW1000/ Protocol Converter - Factory Automation Blog

http://www.datalinkgw1000abeip.com/

DATALINKGW1000.WORDPRESS.COM

---

👍 Like          💬 Comment          ➤ Share

---

 **DataLink Technologies**
August 12, 2015 · 

HOW CAN RSlinx BENEFIT ME?

Have you ever wonder what are some of the benefits of having a product that works with RSLinx, like the GW1000, that will allow RSLinx & RSLogix to access DH+ via AB's Ethernet/IP.

Data Table Monitors: RSLinx can be used to view data values in a PLC-5, SLC-5, MicroLogix, or ControlLogix processor. For RSLinx Data Table Monitor a PLC-5 / SLC-5 / MicroLogix device, select a data table file to view from a list of data table files in the contr...

See More



### DataLink GW1000 DF1 AB Ethernet & Ethernet/IP to DH+ & DH-485

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

DATALINKGW1000ABEIP.COM

---

👍 Like          💬 Comment          ➤ Share

---

 **DataLink Technologies**
August 10, 2015 · 🌐

DataLink GW1000: RSLINX / LOGIX for PLC-5 Programming on AB Data Highway Plus DH+ for $1,250 USD List.

Q. Can I interface my RSLINX / LOGIX on Ethernet to message with my PLC5s on DH+? How many connections will the GW1000 allow on Ethernet?

A. The DataLink GW1000-ABEIP will work best in your RSLINX & RSLOGIX application and any other major HMI / SCADA applications including Kepserver, Wonderware, Citect etc. The GW1000 has the ability will allow to connect up to 5 Etherne...

See More

### DataLink GW1000-ABEIP: Ethernet Data Highway Plus / DH+ Converter

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

WWW.DATALINKGW1000ABEIP.COM

👍 Like      💬 Comment      ➤ Share

---



**DataLink Technologies**
August 10, 2015 · 🌐

DataLink Technologies GW1000 has become a popular Industrial Automation Converter for users needing an interface between their newer Ethernet devices and Legacy Allen-Bradley Data Highway Plus DH+ and DH-485 Networks. The GW1000 provides a way to migrate existing Data Highway Plus / DH-485 factory networks. The GW1000 is also popular with its multi-protocol feature which will be easily changed between DF1, Modbus, Modbus TCP/IP, Ethernet/IP and AB Ethernet to Allen-Bradley's...

See More



## DataLink GW1000 DF1 AB Ethernet & Ethernet/IP to DH+ & DH-485

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

DATALINKGW1000ABEIP.COM

👍 Like      💬 Comment      ➤ Share

---



**DataLink Technologies**
August 3, 2015 · 🌐

DataLink GW1000-ABEIP using RSLINX /LOGIX to message with a SLC 5/04 on Data Highway Plus DH+

Q We have a network with many Allen-Bradley PLC´s and SLC´s in Data Highway Plus. To change the program on one of the SLC5/04 we were using direct connection through A-B communication cable to a laptop running RSLinx/RSview.

... See More



## DataLink GW1000-ABEIP: Ethernet Data Highway Plus / DH+ Converter

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

WWW.DATALINKGW1000ABEIP.COM

👍 Like      💬 Comment      ➤ Share

---



**DataLink Technologies**
August 2, 2015 · 🌐

Compactlogix message with SLC500s on AB Datahighway Plus DH+

Q: I have a customer who several SLC500s on an Allen-Bradley DH+. We will replace one processor with a Compactlogix that has Ethernet connectivity and not DH+. The main PLC is a SLC500 processor in DH+

and it will remain there. It currently sends Write MSG to the processor we are replacing. Because of this, the Compactlogix needs to be able to send MSG to the main PLC and the main PLC needs to send those Write MSGs ...

See More

👍 Like      💬 Comment

---

 **DataLink Technologies**
August 1, 2015 · 🌐

DataLink GW1000-ABEIP: Interfacing a SLC 504 on Allen-Bradley Data Highway Plus DH+ for PLC Programming with RSLINX/RSVIEW on Ethernet

Q.- We have a network of A-B PLC-5s and SLC504s on Data Highway Plus. We are using a direct connection through a laptop using RSLINX / LOGIX
Does the GWP100-ABEIP allow our SLC5/04 into our ethernet network to write/read to/from it. Can we directly interface a laptop using the USB port to talk to the SLC5/04.

... See More

**DataLink Gateways GW1000/ Protocol Converter - Factory Automation Blog**
http://www.datalinkgw1000abeip.com/
DATALINKGW1000.WORDPRESS.COM

👍 Like      💬 Comment      ↗ Share

---

 **DataLink Technologies**
July 31, 2015 · 🌐

GW1000-ABEIP: Panelview Plus on Allen-Bradley Ethernet/IP message to PLC 5s & SLC 5/04s on Data Highway Plus DH+

Q. I have a Panelview Plus that I would like to message with a SLC 5/04 on DH+. Is the GW1000-ABEIP the best option?

A. The DataLink GW1000 will work great connecting your Panelview Plus on AB Ethernet/IP to message with your SLC 5/04 on Data Highway Plus DH+. Your can also add other Ethernet connections for a total of 5 which could include RSLINX/LOGIX on Ethe...

See More

 **DataLink GW1000-ABEIP: Ethernet Data Highway Plus / DH+ Converter**
The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.
WWW.DATALINKGW1000ABEIP.COM

👍 Like      💬 Comment      ↗ Share

---

 **DataLink Technologies**
July 30, 2015 · 🌐

W1000-ABEIP: Ethernet/IP & DF1 Gateway Converter to AB Data Highway Plus DH+: Replacement options for the AB 1784-PCMK & 1784-U2DHP.

Q.
I am looking for an alternative to the Allen-Bradley 1784-PCMK PCMCIA card that is more affordable than the 1784-U2DHP USB PLC Programming

Cable?

... See More



### DataLink GW1000-ABEIP: Ethernet Data Highway Plus / DH+ Converter

The Datalink GW1000-DHP1 DF1 / Ethernet to dh+ / dh485 converter is a gateway between both Ethernet/IP and ABEthernet and DF1 to AB's DH+ & DH-485 Networks.

WWW.DATALINKGW1000ABEIP.COM

👍 Like        💬 Comment        ↗ Share

---

 **DataLink Technologies**
July 29, 2015 · 🌐

DataLink GW1000-ABEIP: SLC 5/05 and RSLINX / LOGIX on Ethernet/IP to Message with a AB SLC 5/04 on Data Highway Plus.

Q. I want to connect my SLC/04 on AB Data Highway Plus to message with my RSLINX on Ethernet. I also have a SLC 5/05 on the same Ethernet/IP network. Can I connect that through the same GW1000 converter?

... See More


### www.datatalinkgw1000abeip.com

WWW.DATATALINKGW1000ABEIP.COM

👍 Like        💬 Comment        ↗ Share

---

 **DataLink Technologies**
July 28, 2015 · 🌐

DataLink GW1000-ABEIP Ethernet/IP Compactlogix to Message with AB SLC500s on Datahighway Plus DH+

Q: I have a client who has a DH+ network with a few Allen Bradley SLC500 processors. We will replace one processor with a Compactlogix that has Ethernet connectivity and not DH+. The main PLC is a SLC500 processor in DH+ and it will remain there. It currently sends Write MSG to the processor we are replacing. Because of this, the Compactlogix needs to be able to send MSG to the ...

See More



### DH+ Ethernet | DH+ To Serial | DH+ Interface | DataLink Tech

DataLink Technologies provides a single converter, multi-protocol gateway for (AB) Allen Bradley PLC users. Learn about our one-box DH+/DH-485 converters.

WWW.DATALINKGW1000-ABEIP.COM

👍 Like        💬 Comment        ↗ Share

---

  **DataLink Technologies**
July 28, 2015 · 🌐

DataLink GW1000-ABEIP. Messaging between a Micrologix on Ethernet/IP and a PLC 5/80 on Data Highway Plus DH+

I want to message between my newer Ethernet/IP PLC Micrologix and a PLC 5/80 on Data highway Plus. Will the GW1000-ABEIP work ok in this application?

... See More

### DataLink Gateways GW1000/ Protocol Converter - Factory Automation Blog

http://www.datalinkgw1000abeip.com/

DATALINKGW1000.WORDPRESS.COM

👍 Like          💬 Comment          ➤ Share

---

**DataLink Technologies**
July 27, 2015 · 🌐

Gw1000-ABEIP, Ethernet/IP Converter to AB's DataHighwayplus (DH+), 5 Ethernet Connections to all nodes on DH+

Q. How may DH+ ports and ethernet ports in 1 GW1000 unit ?

A. The DataLink GW1000-ABEIP has 5 Ethernet/IP connections to access all nodes on the DH+ Network. This means that you could have upto 5 RSLINX / LOGIX 5000 workstations messaging with any nodes on your AB DataHighway Plus (DH+) network.

👍 Like          💬 Comment

---

**DataLink Technologies**
July 26, 2015 · 🌐

I am looking to Connect to an Allen Bradley DH485 network with RSLogix 500.
The DH485 network consists of a SLC 5/03 processor,1747-AIC Link Coupler and a Panelview 550.
All I want to do from the ethernet side of the network is make programming changes in the PLC.
We have 6 units that need the upgrade.

... See More

👍 Like          💬 Comment

---

See More ▾

# EXHIBIT 3

Multi protocol converter $1,250 List 

 **DataLink Technologies Gateways, Inc.**

Call Today
**+1 (866) 286-2745**

| home | about us | ask our engineers | app notes | faq | links | blog | testimonials | contact us | products ⌄ |

## Ethernet/IP & Ethernet TCP/IP to DH+ / DH-485 ($1,250)

 DataLink Technologies Gateways, Inc. is an engineering company, providing a single converter, multi-protocol gateway for (AB) Allen Bradley PLC users;  providing a one-box protocol DH+/DH-485 converter between Ethernet/IP, AB Ethernet, ModTCP and serial (DF1, ASCII, Modbus) protocols. Custom engineering to AB Data Highway Plus (DH+) and DH-485 are available.

The GW1000 platform is a lower priced ($1,250 list), multi-protocol gateway that performs like a "mini" DH+ Controllogix gateway that can be easily converted by the client for other applications including serial DF1, ASCII, Modbus, ModTCP & custom to AB's DH+ and DH-485.

### Order the GW1000 Now | Call +1 (866) 286-2745. $1,250 List.

Thousands of GW1000 are now successfully operating around the world. You can trust our product stability & reliability. All our products come with a 5 year warranty, 30 day money back guarantee / no restocking charge.

**Name** *

First

Last

**Company**

**Phone** *

**Subject** *

**Email**

**I would like to order the following:** *

☐ GW1000-DHPA - Ascii to DH+
☐ GW1000-ABEIP - Ethernet/IP to DH+
☐ GW1000-DHP1 - DF1 to DH+
☐ GW1000-DHPM - Modbus to DH+
☐ GW1000-DHPE - Ethernet TCP/IP to DH+
☐ GW1000-DHPME - ModTCP to DH+
☐ GW1000-DH4851 - DF1 to DH-485
☐ GW1000-DH485A - Ascii to DH-485
☐ GW1000-DH485A - Modbus to DH-485
☐ GW1000-DHPE - Ethernet TCP/IP to 485
☐ GW1000-DH485EIP - Ethernet/IP to DH-485
☐ GW1000-DH485ME - ModTCP to DH-485

**Comments:** *

---

**Featured Products**



DF1 to DH+ | GW1000-DHP1
**$1,250.00 USD**

Ethernet/IP DH+ | GW1000-ABEIP
**$1,250.00 USD**

ASCII to DH+ | GW1000-DHPA
**$1,250.00 USD**

➕ AB Replacements

➕ Gateway to Ethernet TCP/IP

➕ Link to Ethernet /IP

➕ Bridge to Modbus TCP /IP

➕ DF1 Converter to AB

➕ Ascii Converter to DH

➕ Converter to Modbus

**Datalink is in your industry!**

Industries served include Food and Beverage, Metals and Mining, Petrochemicals, Oil and Gas, Pharmaceuticals, Conveying Systems, Forest Products, Pulp and Paper Mills, Bulk Handling, Loading and Unloading Facilities, etc.

---

**ORDER NOW**

Special Pricing in Effect! Order the GW1000 for just $1,250 USD List.

**Follow Us!**



**GW1000 Testimonials**



See more testimonials

**Technical Sales**



Call or email for any technical support issues or pricing inquiries
Toll free: **(866) 286-2745**
or (360) 306-5878

SATISFACTION **100%** GUARANTEED

➕ Datalink Products

➕ Documentation

➕ SLC Gateways

➕ PLC Gateways

➕ Laptop Connectivity

**More About DataLink**



Submit

Call +1 (866) 286-2745.

DataLink GW1000 multi-protocol gateway most common applications include:
Ethernet/IP to DH+ GW1000-ABEIP Functionality:
•   Ethernet  Remote Programming to Legacy PLCs: SCADA/MMI/Programming
Software (RLSINX/LOGIX/VIEW,Wondware, Kepware, Citect, Intellution, etc.) packages
using AB Ethernet /ModTCP Drivers can read/write data from/to multiple DH+/DH-485
nodes.

•   New AB PLCs to Legacy PLCs: Any AB Ethernet & Ethernet/IP PLC (MicroLogix,
SLC 5/05, CompactLogix, FlexLogix, PLC-5E, ControlLogix) as Master will be able to
send either read or write MSG (message) instructions to any DH+ PLC (SLC 5/02 SLC
5/03 SLC 5/04, PLC-5/20, PLC 5/30, PLC 5/40, etc.).

•   New AB PLCs to Legacy Panelviews: DH+ as Master allows applications such as
Panelview on DH+ to message SLC 5/05 on Ethernet.

Serial (DF1, Modbus RTU ASII interface to DH+) Functionality:
•   GW1000-DHP1: DF1 to DH+ alternative to Allen-Bradley's 1770-KF2 and 1784-
U2DHP. It  also provides an external option for  the 1784-P(KTX), 1784-PKTX, 1784-
PCMK or SST 5136-SD.

•   GW1000-DHPM: Modbus RTU to DH+ gateway  that allows any  DH+ node  to
communicate to Modbus RTU devices in either Modbus Master or Modbus Slave mode.

•   GW1000-DHPA:  Scanners, printers, and message displays located anywhere on a
DH+ network can send and receive ASCII messages to and from PLCs in other
locations.

Contact us or your local AB distributor for pricing  and  application details.

## Low Cost AB Replacements

## GW1000 Product Line

## Traditional applications include:

DF1, ASCII & Modbus interfaces to AB's Datahighway Plus (DH+) & DH485. DataLink's
more cost efficient and reliable solutions include replacements to 1770-KF2, 1770-KF3,
1784-KTX, 1784-PKTX, 1784-PCMK products. We have many customizable DH+ & DH-
485 solutions for all types of AB PLC applications. Replacements to SST 5136-SD.

## Low Cost AB Replacements

## 1784-PKTX Replacement

## 1784-KTX Replacement

## 1784-PCMK Replacement

## 1770-KF2 Replacement

## 1770-KF3 Replacement

## Newer applications include

## HMI & SCADA Applications

## Our Guarantee

Satisfaction Guaranteed.  Your complete satisfaction with all our products is essential.
We offer a 30-day money-back guarantee and a five-year warranty on parts and service.

## Product Testimonial

**Technologies**

Interfacing PC's, SCADA Systems,
AB PLC's, SLC's, computers,
modems, variable speed drives and
OEM equipment to Modicon's
Modbus, Allen-Bradley's Data
Highway Plus (DH+), DH-485, and
Remote I/O. Interfacing Industrial
Ethernet (Ethernet I/P, TCP/IP,
Modbus TCPIP), Profibus, and
DeviceNet protocols. See our
complete product index and our best
seller list.

The GW1000-DHP1 is unbelievable....it keeps on running in the most disgusting, hazardous environment you could ever imagine. We didn't even know what the controller was because of all the messy residue covering the box....it just keeps on working. J.S. , Gas Material Corporation. DF1 to DH+.

This device connects **DH+ to DF1**.

copyright 2011 | All rights reserved | sitemap | Contact Us | (360) 306-5878 | Toll free (866) 286-2745

RSLINX | RSLOGIX | RIO | Ethernet/IP DH+ | SLC | PLC | MODBUS DH+ | INTERNAL SOLUTIONS | PRODUCTS | DH+ | DH-485 | 1770-KF2 | 1770-KF3 | 1784-KTX | 1784-PKTX | 1784-PCMK | SST-5136-SD | DF1 to DH+ | | DH+ to Ethernet | 1784-U2DHP | 1784-PKTX

# EXHIBIT 4



# EXHIBIT 5



# EXHIBIT 6



1 result for **"datalink gw1000"**

Showing most relevant results. See all results for datalink gw1000.

**DATALINK GW1000-ABEIP ETHERNET SWITCH (NEW IN BOX)**
by DATALINK GW1000-ABEIP ETHERNET SWITCH (NEW IN BOX)

$95.95 (2 used & new offers)

Show results for

**Everything Else**

Refine by

**Condition**

New

Used

"gw1000" See all 77 results...







**GW1000-ABEIP**
B01003632
00:50:C2:89:FD:CC



DataLink Technologies Gateways, Inc.
Tel: (360) 306-5878
www.datalinkconverters.com

GW1000-ABEIP
B01003632

3020 23084

D12        R6

Amazon Associates
SiteStripe

Get Link: **Text** Image Text+Image    Share: f y    Earnings   Help

NEW & INTERESTING FINDS ON AMAZON    **EXPLORE**

amazon warehousedeals    **Bargain Bin** Everything 50% off or more    Shop now ›

‹ Return to product information    Have one to sell?    Every purchase on Amazon.com is protected by an A-to-z guarantee.    Feedback on this page? Tell us what you think    Ad feedback

## DATALINK GW1000-ABEIP ETHERNET SWITCH (NEW IN BOX)
by DATALINK GW1000-ABEIP ETHERNET SWITCH (NEW IN BOX)

Be the first to review this item    Share ✉ f y

| | Refine by Clear all | | | |
|---|---|---|---|---|
| | | Price + Shipping | | |

**Refine by** Clear all

**Shipping**
☐ Free shipping

**Condition**
☐ New
☐ Used
☐ Like New

| Condition (Learn more) | Delivery | Seller Information | Buying Options |
|---|---|---|---|
| **Used - Good** | • **Arrives between** July 28 - Aug. 14.<br>• Ships from NJ, United States.<br>• Shipping rates and return policy. | jackstraw988<br>★★★★★ 100%<br>positive. (19 total ratings) | **Add to cart**<br>or<br>Sign in to turn on 1-Click ordering. |

**$95.95**
+ $5.49 shipping + $0.00 estimated tax

$1,100.00    New

https://aax-us-east.amazon-adsystem.com/x/c/Qr0zCmyqSku6qoRZyFkANeYAAAFdcZHZLwEAAAH0AbgM3Rc;https://www.amazon.com/b/ref=wd_olp_test?node=16284154011

# EXHIBIT 7



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

**Registration: 2017.0000284348**

**DECISION**

After reviewing, reporting and discussing these case records of Appeal No. 1054138-03.2014.8.26.0100, of the Judicial District of São Paulo, where GOOGLE BRASIL INTERNET LTDA is the appellant and FABRIZIO PORTILHO COENE and LUIZ EDUARDO AURICCHIO BOTTURA are the appellees.

**AGREE,** in the 8th Chamber of Private Law of the São Paulo State Court of Appeal, to issue the following decision: "Partially approved the appeal. Unanimous votes. Oral arguments by Dr. Daniel Rebouças Bressane (OAB 154359)." In accordance with the Rapporteur's vote, which integrates this decision.

The judgment had the participation of the Honorable Justices GRAVA BRAZIL (President without vote), PEDRO DE ALCÂNTARA DA SILVA LEME FILHO AND SILVÉRIO DA SILVA.

São Paulo, April 5, 2017.

**Salles Rossi**
**RAPPORTEUR**
**Electronic Signature**



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

Vote No.: 35.465
Civil Appeal No.: 1054138-03.2014
Judicial District: São Paulo (Central
Courthouse) – 36th Court 1st Instance:
Case No.: 105413803/2014 Appellant:
Google Brasil Internet Ltda.
Appellees: Luiz Eduardo Auricchio Bottura et. alius.

## RAPPORTEUR'S VOTE

CASE SUMMARY = CIVIL LIABILITY – POSITIVE COVENANT COMBINED WITH COMPENSATION FOR PAIN AND SUFFERING – Internet - Plaintiff that seeks the removal of an offensive video about him, disseminated by youtube (a service offered by the defendant) and published by the co-defendant, with the title '*O golpista do ano*' (the scam artistic of the year), as well as the receipt of compensation for pain and suffering I decree partial acceptance - Appeal lodged by Google Brasil, against the joint and several conviction to the payment of the compensation claimed - Appeal that deserves to be accepted - Interim relief fulfilled by the appellant and that is limited to the <u>national territory – Territorial limit of the court decision (art. 16 of the New Code of Civil Procedure)</u> makes the argument of breach of the measure outside the national territory inappropriate – The removal of the content shall be local and not global - Precedents - Decision reversed to exclude Google Brasil Internet's conviction to the payment of compensation for pain and suffering – Unlawful act not perpetrated by it, considering that the provider/host of the search website (that cannot be accountable for the content of a video posted by third parties, in this case, the co-defendant) – Enforceability of the fine (amount limited by this Judgment Panel in the interlocutory appeal) – Matter that cannot be discussed in the appeal, and there is no enforcement, not even provisional, in this sense - Appeal partially accepted.

It is an Appeal lodged against the respectable decision issued in the records of the Positive Covenant Action combined with Compensation for Pain and Suffering that, deciding for



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

the merit of the requests made in the initial petition, ended up decreeing the partial acceptance of the same, making the interim relief definitive to determine to co-defendant Google Brasil the removal of the URL indicated by the plaintiff, convicting it, jointly and severally with co-defendant Fabricio, to the payment of compensation for pain and suffering, for the amount of BRL 20,000.00, readjusted for inflation from the issuance of the decision and added by arrears interest of 1%, since the damaging event, also supporting the payment of court fees and costs, procedural expenses and attorneys' fees, set at 10% of the readjusted amount of the award.

Motion for clarification of judgment on pages 993/996, rejected by the respectable decision on pages 1.004/1.006.

Dissatisfied, co-defendant Google Brasil appealed (pages 1.011/1.035), supporting the need for partial reversal of the respectable decision appealed, considering that the defendant, against the respectable decision granting the interim relief, lodged an interlocutory appeal, received with partial attribution of suspensive effect and that was ultimately partially accepted to reduce the amount arbitrated for the fine. That, after the reply, information came up about the appellee in the sense of its breach of the court order, which was refuted, considering that the removal of the video object of the present action was demonstrated (pages 613/614).

The appellant continues to say that the appellee starts from the mistaken premise by accessing videos from connections made in other countries, while the respectable court decision only has reach in the national territory and does not have effect in other countries, like Uruguay and Argentina, which shows the mistake of the respectable decision to convict it, jointly and



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

severally, to the payment of compensation, under penalty of violation of article 4, III and IV of the Federal Constitution. Moreover, the removal discussed herein, evidently, is limited to the results accessible by the 'google.com.br' domain and not to the 'google.com' website. Mentioned jurisprudence. Awaiting acceptance of the appeal, removing the joint and several liability for the payment of pain and suffering to the appellee, also canceling the punitive fine, inverting the payment of the successful party's fees and costs.

Counterarguments on pages 1.065/1.075.

This is the report.

Firstly, I receive the appeal lodged, in double effect (except for the topic of the respectable decision that made the interim relief definitive), in light of article 1.012, introductory part and § 1, V of the New Code of Civil Procedure, now judging the same, in the terms of article 1.011, II of the same Code.

The appeal deserves to be partially accepted.

The plaintiff sought, in the jurisdictional relief invoked, the removal of an offensive video about him, disseminated by youtube - a service offered by the defendant - and published by the co-defendant, with the title '*O golpista do ano*' (the scam artistic of the year), as well as the receipt of compensation for pain and suffering, claims partially accepted by the respectable decision appealed.

The dispute is limited to supporting the inappropriateness of Google's joint and several conviction to the payment of such compensation, and it has reasons.



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

Effectively, respecting the understanding of the wise sentencing Magistrate, the evidence contained in the case records indicates that the appellant hereunder complied with the respectable decision that granted interim relief (to remove such video). In this sense, check pages 613/614.

Evidently, the judicial command is limited to the national territory, in light of the provisions of article 16 of the New Code of Civil Procedure (old 1 of the Code of Civil Procedure of 1973), such that the appellant, GOOGLE BRASIL, cannot be compelled to promote the removal of this same video in other countries, also because the respectable court decision granting the interim relief (and, as such, the respectable decision appealed), a command only has effects in Brazil when, evidently, it also applies in conflicts involving the internet. To admit the contrary would be to violate the principle of sovereignty of the States and, as such, the provisions of article 4, III and V of the Federal Constitution.

In this sense, an extremely recent decision of the 4th Chamber of Private Law, in the records of Interlocutory Appeal No. 2059415-21.2016.8.26.0000, whose Rapporteur was Justice NATAN ZELINSCHI DE ARRUDA, adequately delimits the issue, as follows:

"**Interlocutory appeal. Positive covenant combined with pain and suffering. Fulfillment of the decision. Decision that, due to the scenarios presented by the appellee, ordered the appellant to comply with the determinations of the respectable decision, under penalty of the crime of disobedience, with the increase of the daily fine. Reversal.**



JUDICIARY BRANCH

SÃO PAULO STATE COURT OF APPEAL

**Decision that seeks to hold the appellant liable for accesses to the content with the aid of tools that allow the perpetration of unlawful acts and that the court decision reaches any existing relationship between Google and web users anywhere in the world. Inadmissibility.**

**The rule is that the removal of the content shall be local, not global. Territorial limit of the judicial commands, which also applies in cases involving the Internet, article 1 of the Code of Civil Procedure. Appeal accepted."**

From the above-mentioned decision, it is possible to extract the following well-made considerations, which are noteworthy, as they are entirely applicable to the case in comment, by saying that:

*"...highlighted, however, that in the motion, it was decided that although the respondent is a global company, this court only has jurisdiction over the national territory, as provided in article 1 of the Code of Civil Procedure.*

*In light of such scenario, after better reviewing the circumstances of the concrete case, it is verified that this could does not have jurisdiction to determine that the video indicated in the complaint not be disseminated in foreign territory, such as Colombia and Germany, under penalty of transposing the sphere of its authority and incurring a violation of the sovereignty of the other countries, and violating the principle of equality between States and self-determination of the people that shall rule international affairs, as provided in article 4, items III and V of the Federal Constitution, pages 943/944.*



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

*Moreover, the Judiciary does not judge based on possibilities. It is necessary to present the fact for the law to be applied.*

*The appellant reports that internet users that access Tube from Brazil are unable to view the content object of the dispute, and that the blocking made is safe and reliable.*

*Firstly, as already exposed, the fulfillment of the court order was recognized by this Court during the discovery phase, and the appellee did not lodge any appeal demonstrating the need for the global removal of the content, therefore, there is nothing to talk about the disobedience crime.*

*Other than this, the Brazilian jurisdiction does not have authority to determine the editing of content in other countries; it cannot reach the production and circulation of information and content in other sovereign States...*".

Moreover, as we know, GOOGLE BRASIL is a search site that only offers users access to the immense range of electronic addresses available in the web upon the insertion of the name of keywords in its application. Evidently, their content cannot be attributed to its and, for this motive, it shall not be held jointly and severally liable for offenses directed against the plaintiff and appellee hereunder.

This means to say that the offenses that motivated the filing of the present claim are not under the responsibility of the appellant (but only of the co-defendant, author of the video), which only allows access to these addresses with the search tool that it offers to users, note again, in the national territory.



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

Adopting this same understanding, in a similar case, check the decision extracted from Interlocutory Appeal No. 537.825-4/0-00, issued by the eminent Justice José Luiz Gavião de Almeida, whose summary is transcribed below:

**"Internet – Website domain – It is not possible to impose to the appellant responsibility for the oversight of eventual offenses to the appellee's assets. It shall defend its interests. Provided that it sees the website that it deems to offend its domain, it shall report it to obtain the blocking – Appeal accepted with remarks."**

And, also (involving the same defendant and the website maintained by it, with the title *blogger*), a decision of the 7th Chamber of Private Law, in the records of Motion for Clarification of Judgment (ED) 0221671-77.2009/50000, whose Rapporteur was Justice SOUSA LIMA, as follows:

**"MOTION FOR CLARIFICATION OF JUDGMENT – Decision – Omission and contradictions – Inexistence of Pain and Suffering caused by third parties - Responsibility to take off the air offensive files not to be confused with the responsibility for the unlawful publication – Information that could only judicially provided – Motion rejected."**

From this last decision, it is also possible to extract the following considerations that are fully applicable here, namely:

*"As affirmed, it was not the appellee's lack of action that caused the pain and suffering suffered by the appellants, but rather the unlawful publication of the material by third parties, or, as it stated: 'the pain and suffering was caused by third parties*



JUDICIARY BRANCH

SÃO PAULO STATE COURT OF APPEAL

*that, for unknown motives, had access to private images of the plaintiffs and misused the same.'*

*In other words, although the appellee only took off the air the offensive files after judicial intervention, it was not this lack of action that caused the damages suffered, but rather acts of third parties. As a matter of fact, Note that, still today, after the judgment of the appeal on the merit of the case, the appellants' images are still distributed on the web as they confirmed... This occurs for one very simple reason: 'The fact that (Google) has the oversight power does not transform it in a censor body of the messages posted in the 'websites', but only authorizes it to remove those that, after a complaint, are verified to be offensive and unlawful...".*

In the same sense and equally involving the same appellant, a decision of this 8th Chamber and Rapporteur, in the records of Civil Appeal No.: 0215076-62.2009, as follows:

**"CASE SUMMARY – COMPENSATION FOR PAIN AND SUFFERING - Internet – Damages that, according to the plaintiffs, result from a manifestation issued by third parties in a website of a complaint maintained by the defendant (with the title blogger) Dismissal – Lack of unlawful act imputable to the website provider/host (that cannot be accountable for the content of the complaints made by third parties) - Respondent that only allows access to users with a search tool that it offers on the web, and it cannot be liable for the content of the news (complaints) posted there – Precedents – Dismissal upheld – Attorneys' fees that shall be arbitrated by equity (art. 20, paragraph 4 of the Code of Civil Procedure), in light of the absence of an award – Decision reversed for this purpose - Appeal partially accepted.".**



JUDICIARY BRANCH
SÃO PAULO STATE COURT OF APPEAL

Exactly due to this, whether because the interim relief was not fulfilled by the appellant (pages 613/614) or in light of the territorial limit of the respectable court decision and, also, for the absence of an unlawful act imputed to it, considering that it is a mere search site provider/host, the respectable decision is hereby reversed to exclude the award imposed to it, for pain and suffering. And, in relation to it and to the plaintiff, the payment of fees and costs, now reciprocal, imposes that each shall support the costs that it disbursed and the fees of their respective lawyers.

At last, the appellant's claim about the enforceability of the fine (amount limited by this Judgment Panel in the interlocutory appeal) cannot be discussed in the appeal, as there is no news of enforcement, not even provisional, in this sense.

Having said this, by my vote, I partially accept the appeal.

**SALLES ROSSI**
Rapporteur

# EXHIBIT 8

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 45 of 59

# Michael Geist





arsp_064 by Anthony Ryan (CC BY-SA 2.0) https://flic.kr/p/d7ciQ7

News

# Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results

June 28, 2017

The Supreme Court of Canada released its much-anticipated Google v. Equustek decision today, upholding the validity of an injunction requiring Google to remove search results on an international basis.  The 7-2 decision (Justices Côté and Rowe dissented, finding that there were alternatives available, the order is ineffective, and expressing concern that the "temporary" injunction was effectively permanent) is not a surprise – last week's Facebook's decision suggested a willingness to side with the weaker Canadian litigant against

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 46 of 59

Internet giants – but the decision will ultimately grant Google more power, not less.

Google will obviously abide the ruling, but as I noted last year, what happens if a Chinese court orders it to remove Taiwanese sites from the index? Or if an Iranian court orders it to remove gay and lesbian sites from the index? Since local content laws differ from country to country, there is a great likelihood of conflicts. That leaves two possible problematic outcomes: local courts deciding what others can access online or companies such as Google selectively deciding which rules they wish to follow. The Supreme Court of Canada did not address the broader implications of the decision, content to limit its reasoning to the need to address the harm being sustained by a Canadian company, the limited harm or burden to Google, and the ease with which potential conflicts could be addressed by adjusting the global takedown order. In doing so, it invites more global takedowns without requiring those seeking takedowns to identify potential conflicts or assess the implications in other countries.

This case stems from claims by Equustek, a Canadian company, that another company used its trade secrets to create a competing product and engaged in misleading tactics to trick users into purchasing it. After struggling to get the offending company's website taken offline, Equustek obtained a British Columbia court order requiring Google to remove the site from its search index. Google voluntarily removed search results for the site from Google.ca search results, but was unwilling to block the sites from its worldwide index. The B.C. court affirmed that the order applied on an international basis, however, issuing what amounted to global takedown order. The case then proceeded to the Supreme Court of Canada.

The Supreme Court's majority decision was written by Justice Abella, who framed the case as follows:

*"The issue in this appeal is whether Google can be ordered, pending a trial, to globally de-index the websites of a company which, in breach of several court orders, is using those websites to unlawfully sell the intellectual property of another company."*

Characterized that way, the outcome to uphold the order is no surprise. As the dissent notes, this is likely a permanent order, not a temporary one. Further, "selling the IP of another company" is an odd way of referencing the sale competing products that used trade secrets.

Justice Abella proceeds to analyze the law of injunctions, but for Internet watchers, the key aspects of the ruling come with the discussion of the Internet implications. The decision acknowledges the challenge of a global Internet order, but concludes that an international takedown is necessary to provide the Canadian company with an effective remedy:

*"The problem in this case is occurring online and globally. The Internet has no borders — its natural habitat is global. The only way to ensure that the interlocutory injunction attained its objective was to have it apply where Google operates — globally. As Fenlon J. found, the majority of Datalink's sales take place outside Canada. If the injunction were restricted to Canada alone or to google.ca, as Google suggests it should have been, the remedy would be deprived of its intended ability to prevent irreparable harm. Purchasers outside Canada could easily continue purchasing from Datalink's websites, and Canadian purchasers could easily find Datalink's*

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 47 of 59

*websites even if those websites were de-indexed on google.ca. Google would still be facilitating Datalink's breach of the court's order which had prohibited it from carrying on business on the Internet. There is no equity in ordering an interlocutory injunction which has no realistic prospect of preventing irreparable harm."*

The majority was not persuaded by concerns about potential legal conflicts of a global takedown order, characterizing them as "theoretical" and indicating that it would be unfair to place the onus on Equustek to determine whether the order would be legally permissible in the other countries.

*"Google's argument that a global injunction violates international comity because it is possible that the order could not have been obtained in a foreign jurisdiction, or that to comply with it would result in Google violating the laws of that jurisdiction is, with respect, theoretical. As Fenlon J. noted, "Google acknowledges that most countries will likely recognize intellectual property rights and view the selling of pirated products as a legal wrong"*

*In the absence of an evidentiary foundation, and given Google's right to seek a rectifying order, it hardly seems equitable to deny Equustek the extraterritorial scope it needs to make the remedy effective, or even to put the onus on it to demonstrate, country by country, where such an order is legally permissible. We are dealing with the Internet after all, and the balance of convenience test has to take full account of its inevitable extraterritorial reach when injunctive relief is being sought against an entity like Google."*

This is a key aspect of the decision as the court has effectively concluded that those seeking global takedown orders do not need to canvass the laws in other countries to consider the potential for conflicts with their request. In doing so, it places the obligation on intermediaries such as Google and increases the likelihood that those companies will pick and choose among the orders they are willing to follow.

The majority also concludes that responding to a global takedown will not interfere with Google's neutral character in providing search results nor that it involves a significant inconvenience:

*"I have trouble seeing how this interferes with what Google refers to as its content neutral character. The injunction does not require Google to monitor content on the Internet, nor is it a finding of any sort of liability against Google for facilitating access to the impugned websites. As for the balance of convenience, the only obligation the interlocutory injunction creates is for Google to de-index the Datalink websites. The order is, as Fenlon J. observed, "only a slight expansion on the removal of individual URLs, which Google agreed to do voluntarily". Even if it could be said that the injunction engages freedom of expression issues, this is far outweighed by the need to prevent the irreparable harm that would result from Google's facilitating Datalink's breach of court orders.*

*Google did not suggest that it would be inconvenienced in any material way, or would incur any significant expense, in de-indexing the Datalink websites. It acknowledges, fairly, that it can, and often does, exactly what is being asked of it in this case, that is, alter search results. It does so to avoid generating links to child pornography and websites containing "hate speech". It also complies with notices it receives under the US*

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 48 of 59

*Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2680 (1998) to de-index content from its search results that allegedly infringes copyright, and removes websites that are subject to court orders."*

Of course, the inconvenience does not come from the technical side of removing search results, which is indeed trivial. The real inconvenience comes from conflict of laws and the potential for global takedown orders coming from across the planet, thereby opening the door to other countries choosing what Canadians might be able to find in search results. Those issues – along with the need to identify the laws in other countries in order to avoid conflicts – do involve significant inconvenience and expense.

This last paragraph noting that Google already removes links to certain content (hate speech, child pornography, and copyright takedowns) highlights the cumulative effect of court decisions and regulations that individually may seem reasonable but which quickly move toward takedowns of all kinds. In fact, the majority cites the international support for Internet injunctions with global effect as a justification for its own order. The net result is the expectation of all countries and courts that they may issue global takedown orders regardless of the impact on Internet users outside the jurisdiction or on Internet intermediaries.

The dissent rests largely on three issues: the notion that the injunction is effectively permanent, its limited effectiveness, and the availability of alternatives. On the term of the injunction:

*"In our view, granting of the Google Order further erodes any remaining incentive for Equustek to proceed with the underlying action. The effects of the Google Order are final in nature. Respectfully, the pending litigation assumed by our colleague Abella J. is a fiction. The Google Order, while interlocutory in form, is final in effect. Thus, it gives Equustek more relief than it sought."*

On effectiveness, the dissent states:

*"The most that can be said is that the Google Order might reduce the harm to Equustek which Fenlon J. found "Google is inadvertently facilitating" (para. 152). But it has not been shown that the Google Order is effective in doing so. As Google points out, Datalink's websites can be found using other search engines, links from other sites, bookmarks, email, social media, printed material, word-of-mouth, or other indirect means. Datalink's websites are open for business on the Internet whether Google searches list them or not. In our view, this lack of effectiveness suggests restraint in granting the Google Order."*

Finally, on alternatives:

*"In our view, Equustek has an alternative remedy in law. Datalink has assets in France. Equustek sought a world-wide Mareva injunction to freeze those assets, but the Court of Appeal for British Columbia urged Equustek to pursue a remedy in French courts: "At present, it appears that the proposed defendants reside in France . . . . The information before the Court is that French courts will assume jurisdiction and entertain an application to freeze the assets in that country" (2016 BCCA 190, 88 B.C.L.R. (5th) 168, at para. 24). We see no reason why Equustek cannot do what the Court of Appeal urged it to do. Equustek could also pursue injunctive relief against the ISPs, as was done in Cartier, in order to enforce the December 2012 Order. In*

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 49 of 59

*addition, Equustek could initiate contempt proceedings in France or in any other jurisdiction with a link to the illegal websites."*

Internet jurisdiction has always presented an enormous challenge for courts and governments. Courts fear that if they are unable to assert jurisdiction, the Internet risks becoming a proverbial "Wild West" with no applicable law. It is not technically hard to comply with global court orders. The difficulty comes with the effects of the order, since if every court asserts jurisdiction, the online world becomes over-regulated with a myriad of potentially conflicting laws.

When it comes to Internet jurisdiction, exercising restraint and limiting the scope of court orders is likely to increase global respect for the law and the effectiveness of judicial decisions. Yet this decision demonstrates what many have feared: the temptation for courts will be to assert jurisdiction over online activities and leave it to the parties to sort out potential conflicts. In doing so, the Supreme Court of Canada has lent its support to global takedowns and vested more power in Internet intermediaries, who may increasingly emerge as the arbiters of which laws to follow online.

---

**Share this:**



☐ **More**

## Related Posts:



**Google v. Equustek: The**



**How the Supreme Court Can Avoid**



**No Monitoring & No Liability: What**

Tags: equustek / google / Internet Jurisdiction / takedowns

---

# 45 Comments

Zaphod

June 28, 2017 at 11:31 am

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 50 of 59



Does Google currently block pirated products from its search engine on a global basis? For example can Disney ask Google to block all sites selling or providing copies of the movie Frozen? Isn't that issue pretty much the same as Google v Equustek?

Reply

---



### John G
June 28, 2017 at 12:03 pm

It is disturbing that neither the majority nor the minority in the SCC
mentioned the issue of courts in all sorts of repressive countries ordering the global takedown of content unacceptable to those countries – the point you led off this article with. Surely some counsel must have mentioned that risk to the court. It is irresponsible of the court not to appreciate the problem and address it.

Reply



#### Jim
July 3, 2017 at 8:15 am

Does anyone here truly think an Iranian or PRC court minded to censor content gives a damn about what the SCC says? I really see no reason to believe that such regime, which are the ones complained about, govern their conduct by our jurisprudence. That kind of hubris I expect more from American lawyers. When an Iranian litigant comes before our courts to request they compel google to block gay/lesbian etc. sites in Canada pirsuant to an Iranian court order, I would like to be in the courtroom when the judge dismisses the application from the bench. Public international law principles are adequate to deal with this, in this country anyway.

My bigger concern with the decision is that itnwas not argued on IP grounds. Trade secret law is different in different jurisdictions. Ny concern is that domestic Canadian law has been given extrateritorial effect, which I think a little concerning.

Reply

---



### Devil's Advocate
June 28, 2017 at 12:57 pm

Here we are, in 2017, and STILL we have totally unqualified people trying to make "legal decisions" about all sorts of internet behaviour.

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 51 of 59

These decisions always have far-reaching implications (usually negative ones) and, for some reason, the geniuses behind these actions feel that taking ONE SEARCH ENGINE like Google, or ONE SOCIAL NETWORKING SITE (like Facebook) to court is going to fix everything.

I mean, if you're going to sue a search engine, why only Google?! Why not ALL OTHER search engines (Bing, Scroogle, DuckDuckGo, etc.)?? Certainly they're all "guilty" of "facilitating" whatever criminal activity they're trying to pin on Google and/or Facebook.

Additionally, these suits are always about things that cannot possibly be more important than the very functions of the Internet they keep threatening to cripple. When that imbalance occurs, it's time to realize that "intellectual property" should never have been given the scope it now has.

Reply



## Shawn

June 28, 2017 at 7:42 pm

It's going to take the Millennials to repeal these corrupt "Intellectual Property" laws so the balance is restored again.

Reply



## JP

July 3, 2017 at 8:20 am

God help us all…

Reply



## Ole Juul

June 30, 2017 at 4:07 am

I'm not so sure that they are unqualified, but it is clear that they are willfully ignorant. As Mr. Geist suggests "Courts fear that if they are unable to assert jurisdiction, the Internet risks becoming a proverbial "Wild West" with no applicable law." The fact is that the internet is already, and will remain, a "wild west" and it is only by having purposefully limited exposure that it seems otherwise. We have to learn to live with that situation.

Anybody who has connected a computer to the open internet will know that there will instantly be dozens of break in attempts per hour. Often even more than that per minute. So you block those in different creative ways. Laws can't do that. Most laws regarding the internet will fail and simply be ignored, either immediately, or with creative technical development. That the courts fear lack of control is a dangerous situation which can only lead to them making other laws that will have a negative

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 52 of 59

impact on society. Fear is dangerous.

Reply



## JP

July 3, 2017 at 8:35 am

@Devils Advocate Explain how the Judges on the Supreme Court and their clerks (27 of the brightest young legal minds in Canada) are unqualified. Courts have been grappling with internet-related issues for the better part of 30 years. They receive tonnes of material from the parties and intervenors on both sides. Qualification and aptitude are not the problem. Indeed, given your stance, I'm sure you've been in favour of other SCC internet-related decisions, such as SOCAN v. Bell and ESA v. SOCAN. I guess they're only unqualified when they take a pro-IP stance, huh?

You may disagree, but many consider IP rights important. Trade secrets are many companies' most valuable assets. Search engines significantly facilitate infringement. That much is not debatable. It makes sense, in principle, that they should assist rights-holders with valid orders from reputable courts in ceasing to help people infringe. The devil may be in the details, but that's where I stand as a matter of principle.

See my comment below for my concerns with this order, namely the extraterritorial effect conferred on domestic Canadian IP laws. That, I think is an issue the Court did not address. Maybe next time!

Reply



## Devil's Advocate

July 3, 2017 at 7:05 pm

It's interesting how, in your comment below, you seem to understand how insane it is to try and literally expand the jurisdiction of Canadian law to something "global". Yet, your attachment to IP appears to blind you to the entire threat of this action.

Just because the Supreme Court may have, as you say, some of "the brightest LEGAL minds", that doesn't account for the lack of gross TECHNICAL ignorance still being demonstrated by the court to the way the Internet actually works.

Your comment below about IP just further enhances my point about how IP interests should not be trumping the very functional fabric of the Internet. When that is threatened by attempts to "enforce" IP, that indicates IP has already achieved far too much scope.

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 53 of 59

I'll also remind you that IP is an artificial construct that was NOT imposed to circumvent culture (a natural construct). IP is the one that is supposed to adapt or die.

Reply

---

Pingback: *Top court upholds worldwide takedown order against Google*

 richmond

June 28, 2017 at 3:01 pm

taking it back to economic and "harm" being done IN Canada the equustek has "intellectual property" but maybe in some other jurisdiction maybe DATALINK is the LEGAL owner of the IP in question so we could end up with the Canadian court NOW violating the rights of a french company
OR how about Canadian distributers of public domain Beatles records BUT the US owner does teh same thing in teh USA where the terms of copyright are LONGER
now blocking the sales of LEGAL in Canada IP merchandise

Reply

---

Pingback: *Canadian Supreme Court Says It's Fine To Censor The Global Internet; Authoritarians & Hollywood Cheer… – Miller Trades*

---

Pingback: *Canada Claims Global Jurisdiction Over Internet | New York Personal Injury Law Blog*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship - BlackArch Linux*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship - Alternative Report*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | Electronic Frontier Foundation*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | Wall Street Karma*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship – Earths Final Countdown*

---

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship – The Conservative Insider*

---

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 54 of 59

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | It's Not The Tea Party*

Pingback: *Canada's ruling on Google search results sparks censorship concerns | TechANerd*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship - BuzzFAQs*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | My CMS*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | My CMS*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship | My CMS*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship Danielle Magazine*

Pingback: *Canada – Worldwide Internet Censorship Is OK With Supreme Court Of Canada*

Pingback: *Canada's ruling on Google search results sparks censorship concerns - InfoSecHotSpot*

Pingback: *Canadian court orders Google to block global search results - SiliconANGLE*

Pingback: *Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - zentrade.online*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship – Governmental Services Corporation Watch*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship - We Go Blog | Buzz*

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide - TorrentFreak*

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide - Business Monkey News*

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide - techreportnow Latest Technology News from the world - The Latest Gadget News Guide*

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide | Crypto Cabaret*

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 55 of 59

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide - World Justice News*

Pingback: *No Monitoring & No Liability: What the Supreme Court's Google v. Equustek Decision Does Not Do - Michael Geist*

Pingback: *Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results – infojustice*

Pingback: *Canada's Supreme Court Orders Google to Remove Search Results Worldwide Canada's Supreme Court Orders Google to Remove Search Results Worldwide | LJ INFOdocket*

Pingback: *Top Canadian Court Permits Worldwide Internet Censorship ~ MCJ™*

Pingback: *Google v. Equustek: Unnecessarily Hard Cases Make Unnecessarily Bad Law - Ariel Katz*

Pingback: *Case Law, Canada: Google Inc v Equustek Solutions, Supreme Court upholds worldwide Google blocking injunction – Hugh Tomlinson QC | Inforrm's Blog*



**JP**

July 3, 2017 at 8:19 am

Does anyone here truly think an Iranian or PRC court minded to censor content gives a damn about what the SCC says? I really see no reason to believe that such regime, which are the ones complained about, govern their conduct by our jurisprudence. That kind of hubris I expect more from American lawyers. When an Iranian litigant comes before our courts to request they compel google to block gay/lesbian etc. sites in Canada pursuant to an Iranian court order, I would like to be in the courtroom when the judge dismisses the application from the bench. Public international law principles are adequate to deal with this, in this country anyway.

My bigger concern with the decision is that it was not argued on IP grounds. Trade secret law is different in different jurisdictions. My concern is that domestic Canadian law has been given extraterritorial effect, which I think a little concerning.

Reply

Pingback: *10 June – 07 July 2017 | Privacy News Highlights*

# Leave a Reply

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 56 of 59

\*

\*



\*

Notify me of follow-up comments by email.

# The Trouble with the TPP

Jump to...

Recent Posts | Recent Columns

Canada's National IP Strategy: My Submission on Awareness, Administration and Innovation

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 57 of 59



July 20, 2017



[My NAFTA Consultation Comments: Promoting Canadian Interests in the IP and E-commerce Chapters](#)

July 18, 2017



[Ignoring the Supreme Court: Federal Court Judge Hands Access Copyright Fair Dealing Victory](#)

July 13, 2017



[Toward an Open and Innovative Internet: What Lies Behind Canada's Net Neutrality Success Story](#)

July 12, 2017



[Federal Court of Appeal Deals Music Labels Major Defeat By Upholding Tariff 8 Internet Streaming Decision](#)

June 29, 2017

## Recent Talks



Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD    Document 16-4    Filed 07/27/17    Page 58 of 59



✕ ✕ ✕

## Open Books

Law, Privacy and Surveillance in Canada in the Post-Snowden Era (University of Ottawa Press, 2015)

The Copyright Pentalogy: How the Supreme Court of Canada Shook the Foundations of Canadian Copyright Law (University of Ottawa Press, 2013)

From "Radical Extremism" to "Balanced Copyright": Canadian Copyright and the Digital Agenda (Irwin Law, 2010)

In the Public Interest: The Future of Canadian Copyright Law (Irwin Law, 2005)

## Get Postings via Email

## Like me on Facebook



Michael Geist
3,018 likes

Like Page    Liked    ➤ Share

You like this   Be the first of your friends to like this

Global Internet Takedown Orders Come to Canada: Supreme Court Upholds International Removal of Google Search Results - Michael Geist

Case 5:17-cv-04207-EJD   Document 16-4   Filed 07/27/17   Page 59 of 59

# Archives

**June 2017**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |  |

« MAY                                                                  JUL »

Michael Geist

mgeist@uottawa.ca



This web site is licensed under a Creative Commons License, although certain works referenced herein may be separately licensed.