Marcia Hofmann (SBN 250087)
ZEITGEIST LAW PC
25 Taylor St.
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

Counsel for Amicus Curiae
WIKIMEDIA FOUNDATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GOOGLE, INC., <br><br> Plaintiff, <br><br> v. <br><br> EQUUSTEK SOLUTIONS INC., CLARMA ENTERPRISES, INC., and ROBERT ANGUS, <br><br> Defendants. | Case No. 5:17-cv-04207-EJD <br><br> **AMICUS CURIAE BRIEF OF THE WIKIMEDIA FOUNDATION IN SUPPORT OF GOOGLE'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ................................................................................................. 1

INTRODUCTION ........................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

    A.    FREEDOM OF EXPRESSION IS A FUNDAMENTAL HUMAN RIGHT THAT INCLUDES THE LIBERTY TO CONVEY, SEEK, AND RECEIVE INFORMATION AROUND THE WORLD. ....... 2

    B.    IF ENFORCED BY UNITED STATES COURTS, WORLDWIDE REMOVAL ORDERS WILL DIMINISH THE RIGHTS OF PEOPLE GLOBALLY TO PUBLISH AND RECEIVE INFORMATION. ............................................................................................................. 5

CONCLUSION ............................................................................................................................... 9

## INTEREST OF AMICUS CURIAE

The Wikimedia Foundation ("Wikimedia") is a public serving, not-for-profit based in San Francisco, California. Wikimedia closely followed the dispute underlying this case in the Canadian courts and intervened in that litigation with permission from the Supreme Court of Canada. *See Google Inc. v. Equustek Solutions Inc.*, 2017 SCC 34.[1]

Wikimedia's core values include freedom of expression and access to information. In support of those values, Wikimedia's mission is to empower people around the world to collect and develop free educational content, and to disseminate it effectively and globally. Wikimedia carries out its mission by developing and maintaining twelve free-knowledge "wiki"-based projects, which it provides to people around the world free of charge.

Wikimedia's most well-known project is Wikipedia, a free internet encyclopedia. Wikipedia is written and edited by a global community of millions of volunteers who devote their time and knowledge to disseminating information to the world. It is one of the most visited websites in the world and one of the largest collections of shared knowledge in human history. In 2017, Wikipedia contained more than 45 million articles in over 280 languages. In July alone, Wikimedia sites received approximately 15 billion pageviews. Declaration of Jacob Rogers ("Rogers Decl.") ¶ 5.

Wikimedia submits this brief to urge the Court to protect the global human right to freedom of expression. We also seek to educate the Court about the impact that content removal orders with worldwide effect could have upon the Wikimedia community, the public's ability to find information in online references such as Wikipedia, and the veracity and completeness of those online references.[2]

---

[1] https://www.canlii.org/en/ca/scc/doc/2017/2017scc34/2017scc34.html.

[2] For more detailed information about the Wikimedia Foundation's projects and activities, see the Declaration of Jacob Rogers filed concurrently with this brief.

The Wikimedia Foundation certifies that no person or entity other than Wikimedia, its members, or its counsel made a monetary contribution to the preparation or submission of this brief, or authored this brief in whole or in part.

**INTRODUCTION**

This case involves an order issued by a Canadian court to compel Google to remove truthful information from its search results—not just in Canada, but around the globe ("Canadian Order"). If routinely enforced by this Court, such orders could force internet platforms to suppress content that runs afoul of *any* country's laws—including information with significant artistic, scientific, historic, and cultural value that is perfectly lawful in the United States and elsewhere. Such orders would diminish the Wikimedia community's efforts to expand access to information, as well as the public's ability to find and access that information. We urge this Court to grant Google's motion for preliminary injunctive relief and decline to enforce the Canadian Order.

**ARGUMENT**

The Canadian Order has implications that extend far beyond the specific Google search results at issue in this case. It could set a far-reaching precedent that hinders access to knowledge everywhere. Wikimedia respectfully asks the Court to keep two points in mind as it considers Google's motion for preliminary injunctive relief. First, the Canadian Order implicates fundamental rights to freedom of expression enshrined not only in the United States Constitution, but in human rights law that protects people around the world. Second, court orders that purport to have extraterritorial effect create a troubling precedent that foreign governments could use to demand the global censorship of information not just by Google, but also Wikimedia and other online service providers. This information could include content with substantial value that countries such as the United States have deemed to be lawful and determined that their citizens have a right to access. Court orders that force internet platforms to remove information should be geographically and temporally limited in deference to individual rights and international comity. They should not impose one country's preferences for the internet upon the rest of the world.

    **A.**    **Freedom of Expression is a Fundamental Human Right that Includes the Liberty to Convey, Seek, and Receive Information Around the World.**

At first glance, this may seem to be a narrow dispute about Google's right, as an online service provider, to publish particular search results. But the Canadian Order has far-reaching implications. In addition to the interests of the parties themselves, Wikimedia urges the Court to

consider the rights of internet users to access information online.

It is well recognized that the First Amendment protects the right "to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *see also Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 866-867 (1982) (collecting cases); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002) ("As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear."). The freedom to access information "is no less protected by the First Amendment than the right to speak." *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002), and is "a necessary predicate to the recipient's meaningful exercise of his own rights of speech[.]" *Pico*, 457 U.S. at 867. This right applies with just as much force on the internet as any other medium. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1735-36 (2017).

The expressive rights of individuals are protected not only by the First Amendment, but under international human rights law. The Universal Declaration of Human Rights includes the following right:

> Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers.

G.A. Res. 217 (III) A, U.N. Doc. A/RES/217(III) art. 19 (Dec. 10, 1948). This right was expanded upon in the International Covenant on Civil and Political Rights, adopted by the United Nations in 1966, which provides:

> Everyone shall have the right to freedom of expression; this right shall include freedom to seek, receive and impart information and ideas of all kinds, regardless of frontiers, either orally, in writing or in print, in the form of art, or through any other media of his choice.

S. Exec. Rep. 102-23, 999 U.N.T.S. 171, 999 U.N.T.S. 171 art. 19.2 (Dec. 16, 1966).

The construction of the right underscores three important principles. First, people are guaranteed the freedom not only to impart information, but also to "seek" and "receive" information. Second, that information may be sought, received, and imparted through any media, including the internet. Finally, the right exists regardless of frontiers—in other words, it is meant to transcend borders and have extraterritorial application. Court orders with global effect may conflict

with the fundamental rights to freedom of expression and access to information guaranteed to all people, including those in the United States.

Wikimedia is particularly concerned about the implications of the Canadian Order because our community is truly international: Wikipedia contributors, editors, and readers are in virtually every country. Worldwide court orders could impair Wikimedia's core values and mission in two ways. First, orders that purport to ban truthful content everywhere in the world undermine our ability to empower people to collect, develop, and disseminate free educational content. If our community members are not free to publish information because courts in other parts of the world have forbidden it, Wikipedia can only be as comprehensive as the most restrictive country's law will allow. By the same turn, Wikipedia users will only have access to the information that the most restrictive country's law will permit.

Worldwide orders like the Canadian Order will also have a chilling effect on our international collaborative community. Wikipedia is based on people working together from all corners of the world. But if each contributor is seeing a different patchwork of sources because certain internet platforms have been ordered to withhold or remove information, it becomes difficult for them to accurately document or even agree on the background of a subject. And if some of those contributors worry that their contributions could subject them to judicial action in a foreign country, even though their content is entirely lawful where they reside, they will be hesitant to contribute at all.

Second, and more specific to the instant case, removal of search results makes it harder for people to find information online. Search engines are an important—and often indispensable—discovery point for information on the internet. In fact, search engine results drive approximately half of all traffic to Wikipedia.[3] If courts restrict the results that search engines can display throughout the world, the global public's ability to find information—including on Wikipedia—will shrink, as well.

---

[3] *See* Wikimedia External Search Traffic, http://discovery.wmflabs.org/external/#traffic_summary (last visited Sept. 15, 2017).

Wikimedia respectfully requests that this Court ensure that fundamental rights to seek and receive information are protected, whether grounded in the First Amendment or international human rights law.

> **B.     If Enforced by United States Courts, Worldwide Removal Orders Will Diminish the Rights of People Globally to Publish and Receive Information.**

Court orders removing content on a global scale are blunt instruments. This case involves the Canadian courts' interpretation of Canadian law, and it may be tempting to defer to their findings and enforce the Candian Order. But this Court should keep in mind that other countries with different legal traditions could issue similar global removal orders—and not every nation respects free expression to the same extent as the United States. Controversial content that is creative, educational, historical, and informative will be challenged in those countries, as well.

Wikimedia is intimately familiar with the global tensions surrounding free expression, as the foundation and its supporters have fought many court battles involving access to knowledge around the world. Rogers Decl. ¶¶ 12-20. A number of those cases involve content-restrictive legal regimes that differ substantially in scope from United States law. For example:

- Wikimedia is currently a co-defendant in a case brought by the City of Mannheim on behalf of the Reiss Engelhorn Museum in Germany.[4] In this case, Wikimedia seeks to ensure that faithful photographic reproductions of two-dimensional public domain artworks remain freely open and accessible in the public domain. Rogers Decl. ¶ 13. Under United States law, faithful reproductions of copyrighted works in a new medium are not sufficiently original to qualify for copyright protection themselves. *See, e.g., Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1221-24 (9th Cir. 1997); *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1267 (10th Cir. 2008); *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir. 1980). But the question is more open in Germany,

---

[4] *See* Michelle Paulson & Geoff Brigham, *Wikimedia Foundation, Wikimedia Deutschland Urge Reiss Engelhorn Museum to Reconsider Suit Over Public Doman Works of Art*, Wikimedia Foundation (Nov. 23, 2015), https://blog.wikimedia.org/2015/11/23/lawsuit-public-domain-art.

-5-

- which has specific photographic copyright laws with no parallel in the United States.

- Wikimedia was the defendant in *Dr. Evelyn Schels v. Wikimedia Foundation*, a case in which it sought to affirm that German law does not prevent the Wikimedia community from publishing truthful and publicly available biographical information about famous individuals. The German court ultimately found that the plaintiff's claim of privacy and personality rights did not prevail over the public's interest in her background as found in publicly available sources.[5] Such publication is unquestionably lawful under United States law. Wikimedia has litigated two other German cases—*Asche v. Wikimedia Foundation* and *Peter Daag v. Wikimedia Foundation*—involving similar legal issues and principles.[6] Rogers Decl. ¶ 14.

- Wikimedia is the defendant in *Tessier v. Wikimedia Foundation* in France, where it is working to protect neutral internet platforms from liability for hosting allegedly defamatory third-party content.[7] Many online platforms that host content for others, including Wikipedia, could not exist without such protection, and in the United States, 47 U.S.C. § 230 provides immunity from liability in such cases. Wikimedia has defended three similar cases in Italy: *MOIGE v. Wikimedia Foundation*,[8]

---

[5] Jacob Rogers, *Victory in Germany (Part Two): German Court Unanimously Dismisses Appeal*, Wikimedia Foundation (Aug. 9, 2016 https://blog.wikimedia.org/2016/08/09/victory-germany-appeal-dismissed; *Dr. Evelyn Schels v. Wikimedia Foundation Inc.*, 142 C 30130/14 (Amstgericht Munchen).

[6] Michelle Paulson, *Two German Courts Rule in Favor of Free Knowledge Movement*, Wikimedia Foundation (Dec. 4, 2012), https://blog.wikimedia.org/2012/12/04/two-german-courts-rule-in-favor-of-free-knowledge-movement.

[7] Michelle Paulson & Jacob Rogers, *Victory in France: Court Rules in Favor of the Wikimedia Foundation*, Wikimedia Foundation (June 20, 2016), https://blog.wikimedia.org/2016/06/20/france-legal-victory.

[8] Michelle Paulson & Geoff Brigham, *Victory in Italy: Court Rules in Favor of the Wikimedia Foundation*, Wikimedia Foundation (July 17, 2015), https://blog.wikimedia.org/2015/7/17/italy-victory-for-wikimedia. An English version of the judgment in *MOIGE* is available at https://wikimediafoundation.org/wiki/File:MOIGE_v._Wikimedia_Foundation_judgment_(english).pdf (last visited Sept. 15, 2017).

*Angelucci v. Wikimedia Foundation*,[9] and *Previti v. Wikimedia Foundation*.[10] Rogers Decl. ¶ 15.

In the future, if worldwide takedown orders become the norm, cases like these will be global in scope, and their outcomes will not be limited to the borders of a particular country. A foreign court's determination that content is unlawful under its local laws could create the absurd result that information that is perfectly lawful in other parts of the world must be entirely removed from the internet, even though many people—including in the United States—may have a right to publish it and read it.

Extraterritorial takedown demands from governments are far from theoretical. Many organizations—Wikimedia included—publish transparency reports to paint a more precise picture of the requests they receive from governments around the world to remove or restrict access to content. For example, Google reports that it has received 53,977 government removal demands since 2009—22,515 of which were received in 2016 alone.[11] Of the demands received in 2016, over half came from Russia.[12] Microsoft reported a total of 753 government content removal demands between July and December 2016 alone, more than half of which were from China.[13] And Twitter received 894 court orders and 5,031 other government demands to remove information from its platform during the same time period, the highest volume of which came from

---

[9] Michelle Paulson, *Victory in Italy: Court Rules Wikipedia "a Service Based on the Freedom of the Users,"* Wikimedia Foundation (July 22, 2014), https://blog.wikimedia.org/2014/07/22/victory-in-italy-based-on-freedom-of-users.

[10] Michelle Paulson, *In a Legal Victory for Wikipedia, the Wikimedia Foundation Wins Lawsuit Brought by Former Berlusconi Advisor*, Wikimedia Foundation (June 26, 2013), https://blog.wikimedia.org/2013/06/26/wikimedia-foundation-legal-victory-italy.

[11] *Google Government Removal Requests*, https://www.google.com/transparencyreport/removals/government/data/?hl=en (downloaded Sept. 15, 2017).

[12] *Google Government Requests to Remove Content: Russia*, https://transparencyreport.google.com/government-removals/by-country/RU (last visited Sept. 15, 2017).

[13] *Microsoft Content Removal Requests Report*, https://www.microsoft.com/en-us/about/corporate-responsibility/crrr (last visited Sept. 15, 2017).

Turkey, Russia, and France.[14] Twitter did not take action on the vast majority of these demands. *Id*. Notably, Twitter received 88 court orders and other legal requests from around the world to remove content posted by journalists and news outlets, nearly 90% of which came from Turkey. *Id*. Twitter filed 314 legal objections in Turkish courts, citing freedom of expression and other concerns, but none of these challenges was successful. *Id*.

In perhaps the most high-profile example of a removal demand, the Court of Justice of the European Union upheld a Spanish court order forcing Google to delist certain search results about a Spanish national. In *Google Spain SL v. Agencia Española de Protección de Datos*, Mario Costeja González sought to suppress information published years earlier about an auction of his assets in connection with attachment proceedings to recover certain debts. Case C-131/12, ELI:EU:C:2014:317 ¶ 14. When a person entered Mr. Costeja González's name into Google's search engine, the results included links to two pages of the La Vanguardia newspaper containing an announcement of the auction. *Id*. Mr. Costeja González lodged a complaint against the newspaper and Google, arguing that they should be required under EU and Spanish data protection law to remove or conceal the announcement because the attachment proceedings had long been resolved, and so had become irrelevant. *Id*. at ¶ 15. The Spanish authorities determined that they could not order the newspaper to remove the content, as its publication was "legally justified." *Id*. at ¶ 16. But Google was forced to remove the announcement from its search results, establishing the so-called "right to be forgotten" under EU data protection law. *Id*. at ¶ 98. In a different case originating from France (and in which Wikimedia has intervened, Rogers Decl. ¶ 16), the Court of Justice of the European Union is now considering whether European removal orders require Google to delist search results within one country, all of Europe, or worldwide.[15]

---

[14] *Twitter Removal Requests*, https://transparency.twitter.com/en/removal-requests.html (last visited Sept. 15, 2017).

[15] Reuters, *French Court Refers 'Right to be Forgotten' Dispute to Top EU Court* (July 19, 2017), https://www.reuters.com/article/us-google-litigation/french-court-refers-right-to-be-forgotten-dispute-to-top-eu-court-idUSKBN1A41AS; Aeryn Palmer, *Update: Wikimedia's Petition Against the Global Extension of Search Engine Delistings*, Wikimedia Foundation (July 31, 2017), https://blog.wikimedia.org/2017/07/31/global-search-engine-delistings-petition.

Global orders for the removal of content impose one country's idea of freedom of expression on citizens of the rest of the world. Some countries have high bars for protecting free speech and the right to receive information. And some countries do not share the values expressed in the United States Constitution or international human rights law. If United States courts enforce removal orders from nations like Canada, Germany, and France, perhaps they will also remove content when ordered by Turkey, Russia, or China. Should global removal orders become common, the internet could descend to the lowest legal common denominator at the expense of the global public, content platforms like Wikipedia, and search engines such as Google.

## CONCLUSION

For the foregoing reasons, Google's motion for preliminary injunctive relief should be granted.

DATED:  September 15, 2017                    Respectfully submitted,

                                         */s/ Marcia Hofmann*
Marcia Hofmann
ZEITGEIST LAW PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

Counsel for Amicus Curiae
WIKIMEDIA FOUNDATION