QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (CA Bar No. 243473)
　margretcaruso@quinnemanuel.com
Carolyn M. Homer (CA Bar No. 286441)
　carolynhomer@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:　(650) 801-5000
Facsimile:　(650) 801-5100

*Attorneys for Plaintiff*
*Google Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Google Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Equustek Solutions Inc., Clarma Enterprises Inc., and Robert Angus, <br><br> Defendants. | Case No. 5:17-cv-04207-EJD <br><br> **GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF GOOGLE INC.'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** <br><br> HEARING <br><br> DATE: October 26, 2017 <br> TIME: 9:00 a.m. <br> PLACE: Courtroom 4 - 5th Floor <br> JUDGE: Hon. Edward J. Davila |

## **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................1

I. THE NORTHERN DISTRICT OF CALIFORNIA HAS PERSONAL JURISDICTION OVER THE CANADIAN DEFENDANTS ..............................................1

II. THE MERITS OF GOOGLE'S FIRST AMENDMENT AND COMMUNICATIONS DECENCY ACT ARGUMENTS ARE UNOPPOSED ..................3

III. MR. ANGUS'S LETTER OFFERS NO LEGITIMATE GROUNDS UPON WHICH TO DENY GOOGLE'S MOTION .....................................................................4

    A. Defendants' Sales Chart Does Not Show The Canadian Order Is Effective ..............5

    B. At Equustek's Urging, The Supreme Court Of Canada Chose Not To Consider U.S. Law. ...................................................................................................6

    C. Mr. Angus Misapprehends The Law When He Argues "There Is No Need For Any U.S. Court To Get Involved." ......................................................................8

    D. Google Is Not Ignoring "The Rule of Law." ............................................................8

CONCLUSION ........................................................................................................................9

# TABLE OF AUTHORITIES

**Page**

CASES

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................................................ 2

*D-Beam Ltd. Partnership v. Roller Derby Skates, Inc.*,
  366 F.3d 972 (9th Cir. 2004) ................................................................................................... 5

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) ................................................................................................... 4

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................................................ 8

*Jones v. Metropolitan. Life Insurance Co.*,
  No. 08-cv-03971, 2010 WL 4055928 (N.D. Cal. Oct. 15, 2010) ............................................ 5

*Nebraska Press Association v. Stuart*,
  427 U.S. 539 (1976) ................................................................................................................ 6

*Valle Del Sol Inc. v. Whiting*,
  709 F.3d 808 (9th Cir. 2013) ................................................................................................... 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
  433 F.3d 1199 (9th Cir. 2006) ......................................................................................... 2, 3, 7

*Zynga, Inc. v. Vostu USA, Inc.*,
  No. 11-cv-02959, 2011 WL 3516164 (N.D. Cal. Aug. 11, 2011) ........................................... 7

CONSTITUTION, STATUTES, AND RULES

U.S. Constitution, First Amendment ........................................................................................ *passim*

Communications Decency Act, 47 U.S.C. § 230 .................................................................. 1, 4, 9

Fed. R. Evid. 1006 .......................................................................................................................... 5

Fed. R. Evid. 802 ............................................................................................................................ 5

Fed. R. Evid. 901 ............................................................................................................................ 5

N.D. Cal. Local Rule 5-1 ................................................................................................................ 5

OTHER AUTHORITIES

Restatement (Fourth) of Foreign Relations Law § 408 .................................................................. 7

**INTRODUCTION**

Google's motion for a preliminary injunction should be granted. This Court has personal jurisdiction over Defendants under the law of this circuit, and it is undisputed that enforcement of the Canadian injunction they obtained against Google (the "Canadian Order"), as it pertains to the United States, violates the First Amendment and Communications Decency Act.

Defendants did not file an opposition to Google's motion, nor answer Google's complaint. Instead, in a belated letter faxed to Google's counsel (represented to be a copy of what Defendants also faxed to the Clerk of Court for this District), personal defendant Robert Angus explicitly declared Defendants' intention not to defend against Google's suit. He expressed his personal view that Google's motion is unnecessary and unfair, without citations to the legal authority of the United States or the factual record. The letter is procedurally deficient for numerous reasons, but even if treated as a timely and legitimate filing, it lacks any merit.

The Canadian Order is unenforceable in the United States. It is inconsistent with the Constitution's robust protections for free speech, the immunity Congress effected through the Communications Decency Act, and principles of international comity. Given Defendants' default, Google is likely to prevail in this action. With the balance of equities and public interest strongly favoring Google, this Court should issue a preliminary injunction against enforcement of the Canadian Order in the United States.

**ARGUMENT**

**I.   THE NORTHERN DISTRICT OF CALIFORNIA HAS PERSONAL JURISDICTION OVER THE CANADIAN DEFENDANTS**

This Court has personal jurisdiction over Defendants Equustek Solutions Inc., Clarma Enterprises Inc., and Robert Angus (collectively "Equustek") based on their persistent (and successful) efforts to extract from Google, a resident of California, numerous changes to search results displayed in the United States. In this circuit, the pursuit of international litigation against a U.S. company to compel removal of search results has been held to establish personal jurisdiction in the United States over the international parties for purposes of determining whether

the extraterritorial orders they obtained are enforceable in the United States.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1209-11 (9th Cir. 2006).

The *Yahoo!* decision addressed the question of personal jurisdiction over two French civil rights organizations that had obtained orders against Yahoo in a French court.  Those orders required Yahoo to remove certain content from its French services, including search results displayed in France (i.e., all "messages, images and text relating to Nazi objects, relics, insignia, emblems and flags, or which evoke Nazism").  *Yahoo!*, 433 F.3d at 1202-03.  Yahoo then brought a declaratory judgment action in the Northern District of California seeking an order that the French removal order was unenforceable in the United States.  *Id.* at 1204.  While the federal action was pending, Yahoo voluntarily revised its policies to eliminate "much of the conduct prohibited by the French orders."  *Id.* at 1205.

The French defendants contended that this Court lacked personal jurisdiction over them because they had "not sought enforcement of the French court's orders in this country" and had stated that they would "not seek enforcement or penalties so long as Yahoo! continues its current course of conduct."  *Id.* at 1210-11.  An *en banc* majority rejected that argument.  *Id.* at 1201, 1211.  Because the French defendants had "obtained two interim orders from the French court directing Yahoo! to take actions in California," and because they "want[ed] to be able to return to the French court for enforcement if Yahoo! return[ed] to its 'old ways,'" the court concluded that the French defendants had purposefully directed their activity toward California by "some transaction" with Yahoo, a resident of California.  *Id.* at 1205-06, 1209-1211.  The exercise of personal jurisdiction over the French defendants was reasonable for Yahoo's declaratory judgment action, which arose from, and related to, the French defendants' litigation efforts against Yahoo in France.  *Id.* at 1209-1211; *see also id.* at 1205-07 (setting forth three-prong jurisdiction test and three-prong *Calder v. Jones*, 465 U.S. 783, 789-790 (1984) test for "purposeful direction").

Like the *Yahoo!* defendants, Equustek "intentionally filed" an application for an injunction against a California resident in a foreign court, unequivocally seeking relief targeting that California resident.  *Compare Yahoo!*, 433 F.3d at 1209 *with* Declaration of Stephen R. Schachter (Dkt. 16-2), Ex. 8 (Equustek's Notice of Application against Google).  Equustek served the

application on Google in Mountain View, California.  *See* Complaint (Dkt. 1) ¶ 11.  Equustek sought and obtained from the foreign court "orders directing [the California company] to perform significant acts in California."  *Compare Yahoo!*, 433 F.3d at 1209 *with* Schachter Decl., Ex. 10 (*Equustek Solutions Inc. v. Jack*, 2014 BCSC 1063 (hereinafter "Trial Court Op.")) ¶¶ 30-31, 145-46, 159, 161 .

The case for personal jurisdiction against Equustek is much stronger than against the French *Yahoo!* defendants, who had expressly disavowed any intent to require Yahoo to remove listings in the United States.  *See Yahoo!,* 433 F.3d at 1221-22 (plurality opinion).  Because the Canadian Order requires Google to "block access by users in the United States, this [is] a different and much easier case."  *Id*. at 1222 (plurality opinion).  And unlike Yahoo, which admitted that it "has not shown or even alleged any specific way in which it has altered its behavior in response to the French court's interim orders," *id*. at 1209, Google continues to alter its search results returned in the United States only because the Canadian Order expressly requires it to do so.  *See* Declaration of Andrew Strait (Dkt. 16-1), ¶¶ 8, 12-14.  Exercising jurisdiction over Equustek to determine whether the orders Equustek obtained against Google in Canada, and defended all the way up to the Supreme Court of Canada, comports entirely with fair play and substantial justice, and is thus proper.

## II.     THE MERITS OF GOOGLE'S FIRST AMENDMENT AND COMMUNICATIONS DECENCY ACT ARGUMENTS ARE UNOPPOSED

Mr. Angus does not dispute that the Canadian Order violates the First Amendment.  He does not even mention the First Amendment, but merely asserts, without citation or authority, that this action does not "raise legitimate freedom of expression concerns."  As detailed in Google's opening brief, the Canadian Order Equustek obtained unequivocally "raises legitimate freedom of expression concerns" under the First Amendment.  *See* Opening Br. (Dkt 16) at 8-16.  U.S. jurisprudence instructs that the proper remedy for trade secret misappropriation on the internet is not to enjoin innocent third party services from reporting on the existence of publicly available information (i.e., censorship), but rather, to take steps to shut down the operations of the direct infringer.  *See id.* at 8-15.  It is undisputed that notwithstanding Google's compliance with the

Canadian Order for the past three years, Datalink sites remain active and readily accessible to the public.

Mr. Angus also does not dispute that the Canadian Order violates the Communications Decency Act ("CDA"). He does not even mention the CDA. While Mr. Angus contends that courts must be able to "act against illegal activity occurring on the internet" lest "we no longer live in a world ruled by law," the only alleged illegal activity here was committed by the Datalink defendants in the Canadian action. No court has ruled that Google itself engaged in any illegality by including and displaying the Datalink websites in its search results. *See* Schachter Decl., Ex. 10 (Trial Court Op.) ¶ 156 (acknowledging that Google is an "innocent bystander"). All Google did was legally display "information provided by another information content provider"—i.e. Datalink. *See* 47 U.S.C. § 230. The CDA thus prohibits enforcement of the Canadian Order for speech within the United States (i.e., Google search results returned to users in the United States), as the Order is premised on content the Datalink defendants (i.e., third parties) created and chose to publish online. *See* Opening Br. at 16-18.

### III. MR. ANGUS'S LETTER OFFERS NO LEGITIMATE GROUNDS UPON WHICH TO DENY GOOGLE'S MOTION

Google agreed, at Defendants' request, to extend their time to answer the Complaint and to submit a motion to extend their time to oppose the preliminary injunction motion until September 7, 2017. (Dkt. 25 at 2; Dkt. 26 at 2.) But Defendants did not file a response to Google's complaint or its motion by the deadline. Instead, on September 8, Defendant Robert Angus faxed a letter to Google's counsel (and seemingly to the Court) declaring that the Defendants "cannot afford to defend this case against Google, and have not filed any defense." Mr. Angus's letter confirms that Defendants have conceded, meaning that all factual allegations in Google's Complaint should be treated as true. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Mr. Angus purports to "tell" the Court what Defendants' "position on this litigation is." The Court should disregard his submission as procedurally improper.[1] *See, e.g.*, *Jones v. Metro. Life Ins. Co.*, No. 08-cv-03971, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) ("[B]ased on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders."). But even if accepted, Mr. Angus's legally and factually unsupported letter offers no legitimate reason to deny Google's motion.

### A. Defendants' Sales Chart Does Not Show The Canadian Order Is Effective.

Mr. Angus asserts that the Canadian Order is "effective" and includes a table purporting to show Equustek's sales over time. But the table does not comply with any federal evidentiary rules. *E.g.*, Fed. R. Evid. 802 (hearsay), 901 (authentication), 1006 (summaries). Tellingly, Equustek never introduced this table, or any detailed sales records, in the Canadian proceedings, *see* Schachter Decl., Ex. 20 (BCCA order denying stay) ¶ 25 (accepting Equustek's argument that the future "task of establishing the value of its lost profits" "will be difficult" and the loss "may be incalculable"), even though Google had argued the non-effectiveness of the Canadian Order in Canadian courts, *id.*, Ex. 1 (SCC Op.) ¶¶ 55, 77-79 (dissent explaining why Google was correct in arguing that global order was ineffective).

Even if Mr. Angus's chart accurately reflects Equustek's sales, there is no way to tell whether it supports the "effectiveness" conclusion Mr. Angus argues. For example, it does not address any other factor contributing to the more recent sales increase: did Equustek modify its product, lower its price, or increase its marketing budget? Has overall demand for the product category increased? How was Equustek affected by the global financial downturn in 2008? Has the competitive landscape or Canadian market changed in any other way? Might some combination of these discrete factors be responsible for the supposed uptick in sales?

---

[1] In addition to being untimely, the letter suffers from numerous procedural deficiencies. Because Mr. Angus does not represent himself to be a lawyer, his letter may be viewed as a *pro se* submission—but only as to himself as an individual because "corporations and other unincorporated associations must appear in court through an attorney." *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) (citations omitted). Even *pro se* parties should use the Court's Electronic Case Filing ("ECF") system—not fax legal submissions. *See* N.D. Cal. Local Rule 5-1(b).

1   Even if all of these questions were resolved in Equustek's favor, for purposes of First
2   Amendment analysis of the effectiveness of censoring the speech of a single search engine,
3   Mr. Angus's table is wholly irrelevant.  The First Amendment's test for effectiveness is not that
4   the ban has some measurable effect; it is that there is a complete affinity between the ban and
5   preventing access to the information by the public.  *See, e.g.*, *Nebraska Press Association v.*
6   *Stuart*, 427 U.S. 539, 542-44, 565-67 (1976) (gag order on national media was not effective to
7   stop spread of word-of-mouth news about public jury trial).  Equustek cannot satisfy that test.  The
8   public can still access Datalink's websites, regardless of what action Google alone takes.  *See*
9   Opening Br. at 12-14; Declaration of Margret Caruso (Dkt. 16-4), Ex. 1 (list of live Datalink
10  websites); Schachter Decl. ¶ 13.

11  Mr. Angus asserts that "[e]veryone knows … that it is not possible for an online business
12  to survive if it cannot be found on Google," but the fact remains that Datalink's business *has*
13  survived—notwithstanding Google's ongoing compliance with the Canadian Order for over three
14  years.  *See* Caruso Decl. ¶¶ 2-7, Exs. 1-6; Strait Decl. ¶¶ 12-14.  Mr. Angus also claims that the
15  trial court made a finding to this effect "based on expert evidence."  But the trial court's opinion
16  that "the defendants will not be commercially successful" without appearing in Google search
17  results did not cite any expert testimony, nor was any such evidence ever even introduced in the
18  Canadian proceedings, as far as Google knows.  *See* Schachter Decl., Ex. 10 (Trial Court Op.)
19  ¶ 152.

20  **B.    At Equustek's Urging, The Supreme Court Of Canada Chose Not To Consider**
21         **U.S. Law.**

22  At oral argument before the Supreme Court of Canada, Equustek's counsel argued that the
23  enforceability of the Canadian Order "in the United States is a question for U.S. courts, it has
24  nothing to do with this case," and that once the Supreme Court of Canada ruled, "the American
25  courts [can] then tell us what the law really is."  *See* Schachter Decl., Ex. 23 (SCC Argument Tr.)
26  at 111-12, 115.  These words speak for themselves, irrespective of how Mr. Angus tries to spin
27  them.  Having first chosen to inject U.S. speech law into the Canadian action by seeking a *global*
28  order to censor Google's speech, and then having persuaded the Canadian courts that the issues

of U.S. law were for U.S. courts to consider on a later day, it is disingenuous for Mr. Angus to object now that the day has come.

Mr. Angus repeatedly represents that Equustek has "never had any intention of applying to U.S. courts to enforce our Canadian order" because it already won in Canada. This misses the point. By requiring compliance in the United States, Equustek has effectively already sought enforcement of the Canadian Order in the United States. Compliance as to U.S. speech—here Google's U.S. search results—cannot occur anywhere but the United States. Equustek's insistence on Google's compliance with its foreign order *within the United States* is the precise scenario a majority of Ninth Circuit judges determined would have presented a ripe First Amendment dispute in *Yahoo!*. *See* 433 F.3d at 1222 (3-vote plurality opinion on ripeness indicating that United States enforcement would violate the First Amendment), 1244-45 (5-vote separate opinion concurring on jurisdiction, dissenting on ripeness, and concluding on the merits that ordering Yahoo to take delisting actions in the United States violates the First Amendment).

The only reason enforcement of the French orders in *Yahoo!* was *not* barred by the First Amendment was because the French defendants expressly acknowledged that they only sought prohibition of Yahoo's listings for anti-Semitic materials from appearing *in France.* 433 F.3d at 1212 (plurality opinion). In contrast, Equustek has insisted that Google must suppress search results returned to users located within the *United States*. That position unavoidably seeks enforcement of the Canadian Order within the United States, and it violates the First Amendment. The foreign relations laws of the United States (and Canada) do not permit the extraterritorial enforcement of injunctions absent sovereign consent. *See* Schachter Decl., Ex. 22 (Intervening Brief of Attorney General of Canada) ¶¶ 1, 21-30; Restatement (Fourth) of Foreign Relations Law § 408; *Zynga, Inc. v. Vostu USA, Inc.*, No. 11-cv-02959, 2011 WL 3516164, at *3 (N.D. Cal. Aug. 11, 2011) (recognizing federal judicial policy of "protect[ing] the court's own jurisdiction" and enjoining "enforcement of [an] exceptionally broad Brazilian injunction" that "would prevent this Court from meaningfully adjudicating the claims of U.S. copyright infringement in this case"), *restraining order dissolved after Brazilian court stayed original injunction*, 816 F. Supp. 2d 824, 827 (N.D. Cal. Sept. 16, 2011).

C.  **Mr. Angus Misapprehends The Law When He Argues "There Is No Need For Any U.S. Court To Get Involved."**

Mr. Angus argues that this Court "need" not get involved in this matter, but his reasoning misapprehends the record—and the law. He acknowledges that Google could go back to the Canadian trial court and seek a "variance." Yet he identifies no basis for Google to do so, and ignores the recognition by both the Supreme Court of Canada and the British Columbia Court of Appeals that if any other "jurisdiction finds the order offensive to its core values, an application could be made [by Google] to the court to modify the order so as to avoid the problem." Schachter Decl., Ex. 21 (BCCA Op.) ¶ 94.[2]

Mr. Angus notes that Google could wait until the conclusion of the Canadian trial that he represents is scheduled for next year. But he says nothing about U.S. case law holding that the "loss of First Amendment freedoms, for even minimal amounts of time, unquestionably constitutes irreparable injury." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also* Opening Br. at 22.

Mr. Angus's contention that Google did not previously reveal the specific location from which its search results take-downs are conducted is wholly irrelevant. Because the Canadian Order covers speech occurring within the United States (i.e., Google's search results returned to users in the U.S.), U.S. law applies to that speech.[3]

D.  **Google Is Not Ignoring "The Rule of Law."**

Mr. Angus repeatedly suggests that Google views itself as above the rule of law, notwithstanding that Google has fully complied with the improperly extraterritorial Canadian injunction orders against it—the original one and the nine ensuing ones—and duly appealed them in Canada. *See* Schachter Decl., Exs. 10-19 (original and supplemental orders); *id.*, Ex. 1 (SCC

---

[2] *See also id.*, Ex. 1 (SCC Op.) ¶¶ 46-47 (holding that it is not Equustek's burden under the "balance of convenience" test to "demonstrate, country by country, where such an order is legally permissible").

[3] In any event, however, Google conducts search de-listing of the type Equustek obtained from the United States. *See* Strait Decl. ¶ 8. The Canadian trial court knew this. *See* Schachter Decl., Ex. 10 (Trial Court Op.) ¶ 146 ("[O]n the record before me, the injunction would compel Google to take steps in California or in the state in which its search engine is controlled … .").

Op.). Now that those appeals are exhausted, Schachter Decl. ¶ 2, Google turns to this Court to vindicate its rights—all the while complying with the Canadian Order.

Google has never been found in contempt of the Canadian Order. Google's goal in this action is to vindicate its rights under the First Amendment and the Communications Decency Act regarding search results returned within the United States, issues over which this Court indisputably possesses jurisdiction and authority. Google is operating *within* the law to defend its fundamental constitutional speech right in the United States to truthfully report in its search results the existence of websites that are relevant and readily accessible to the public.

## CONCLUSION

Personal jurisdiction exists over Equustek. With the merits of Google's motion uncontested, this Court should issue a preliminary injunction barring enforcement of the Canadian Order in the United States.

DATED: September 21, 2017   QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Margret M. Caruso
     Margret M. Caruso
     Carolyn M. Homer

     *Attorneys for Plaintiff*
     *Google Inc.*